**Marvin A. YAWITZ, Appellant,**

v.

**Caspar W. WEINBERGER, Appellee.**

**No. 74–1024.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1974.

Decided June 11, 1974.

Michael A. Gross, St. Louis, Mo., for appellant.

Jean C. Hamilton, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

PER CURIAM.

This is a suit under 42 U.S.C. § 405(g) for disability benefits alleged to be due Marvin A. Yawitz under sections 216(i) and 223 of the Social Security

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

Act, 42 U.S.C. §§ 416(i) and 423. The claim was refused by the Social Security Administration and after Yawitz had exhausted all of his administrative remedies, including a hearing before an administrative law judge and an adverse decision from the Appeals Council, he brought this action in district court against the Secretary of Health, Education and Welfare. Both Yawitz and the Secretary moved for summary judgment, and after a referral to a magistrate for recommendations, the district court granted summary judgment to the Secretary. We reverse and remand with directions to enter judgment for Yawitz.

Yawitz claims that he suffers from severe migraine headaches which cause him such pain that he is not able to concentrate or engage in an occupation. The administrative law judge, whose findings were adopted by the Appeals Council, found that Yawitz was not suffering from a disability as that word is defined in section 223(d) of the Act, 42 U.S.C. § 423(d). Yawitz challenges this finding; and the issue, therefore, ultimately, is whether or not Yawitz has a disability as defined by the statute.[1]

In his findings the administrative law judge found that Yawitz did suffer from migraine headaches which are partially disabling. However, he also found that Yawitz "was capable and is capable of engaging in substantial gainful activity . . . ." Therefore, the claimant does not meet the statutory requirement that he be incapable of such activity and he does not fall within the statutory definition of "disability."

■ The fact findings made by the administrative law judge must be sustained by this Court if they are supported by substantial evidence based on the record as a whole. Social Security Act § 205(g), 42 U.S.C. § 405(g); Brasher v. Celebrezze, 340 F.2d 413, 414 (8th Cir. 1965). However, as was stated by the Ninth Circuit in Ainsworth v. Finch, 437 F.2d 446, 447 (9th Cir. 1971):

> While we are not to try the claim de novo, "[t]his does not mean that it was intended that the courts should abdicate their conventional judicial function to review," McMullen v. Celebrezze, 335 F.2d 811, 814 n. 4 (9th Cir. 1964). We cannot escape our duty "to scrutinize the record as a whole to determine whether the conclusions reached have a reasonable basis in law." Hicks v. Gardner, 393 F. 2d 299, 302 (4th Cir. 1968).

*See also* Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Celebrezze v. Bolas, 316 F.2d 498, 501 (8th Cir. 1963).

As we review the record in this case, then, we must keep in mind that the Supreme Court has defined "substantial evidence" as used in the Social Security Act to be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91

---

1. Section 223(d) of the Act, 42 U.S.C. § 423(d), provides:

(d)(1) The term "disability" means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

.    .    .    .    .

(2) For purposes of paragraph (1)(A)—
(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting from Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938)).

After a careful study of the record herein we are unable to find such substantial evidence as will support the Secretary's decision. The relevant evidence adduced at the hearing of December 21, 1972, and from various exhibits introduced therein reveals the following facts:

Marvin Yawitz was born in 1914. He attended college, majoring in business administration and completed about one and one-half years. He was gainfully employed in various jobs from 1932 until 1970 when he claims that he became disabled. Most of his jobs have been in the retail sales field, and he has also had experience in office management and stock management positions. From 1953 to 1960 he owned and operated a hardware store. He appears to have been successful monetarily, earning between $12,000 and $24,000 per year. His average annual income has been around $18,000. He is married and lives with his wife who is not engaged in any outside employment. They have two married daughters.

Yawitz has complained of headaches since at least 1940. It would appear, however, that in the past ten or fifteen years the complaints have become more frequent. In spite of this, he continued to work, although he has worked for several employers since 1960. He claims that in every case his inability to function due to headaches has resulted in the termination of his employment. Apparently most of his jobs were provided by family or close personal friends who eventually decided that he was too unproductive when his headaches struck.

The headaches themselves are very painful to Yawitz. He says his head hurts all the time to some extent, but that really severe headaches hit as often as twice a week; although he sometimes goes for up to twelve days without the severe kind. He has found that all he can do when a headache comes on is to rest in a dark, quiet room. These attacks can last for three or four days.

Yawitz claims that these severe headaches affect his work in that when he gets one he cannot stay on the job and perform properly. He frequently cannot get to work until late and must leave early. He thus simply cannot function in a structured work situation.

In spite of the headaches, however, Yawitz drives a car, has gone on camping trips across country in a van-type camper, and in 1972 drove a large school bus from Chicago to St. Louis. Frequently, however, Yawitz and his wife covered very little distance in a day and he tended to drive short stretches at a time. Additionally, Yawitz does considerable handiwork around his house. He has fixed up his basement and is converting the school bus into a camper himself. Yawitz insists, however, that this work is therapy and that he works slowly and only when his headache situation will allow.

The medical testimony and evidence all tended to support Yawitz. Dr. Lewis E. Littmann has been Yawitz' personal physician since 1940. He testified to the effect that the headaches were real even though it was hard to find any objective signs that Yawitz was having one except for perspiration and slightly increased blood pressure. Yawitz has undergone every kind of test to determine what may be causing the headaches. All these tests have had negative results. No medication has worked consistently to relieve the pain. Dr. Littmann maintained that no one really knows what causes tension headaches of this kind, although he could and did describe the physiological occurrences which take place in the blood vessels in the head which result in the pain that is felt. The gist of Dr. Littmann's testimony was to the effect that Yawitz' headaches were apparently getting more frequent and more severe; that their onset was unpredictable; and that when one struck it made any work Yawitz was doing erratic.

There is also correspondence from three other doctors in the record. One letter, dated September 25, 1951, is from a Dr. George L. Hawkins, Jr. His conclusion after examining Yawitz was that he "has tension headaches and a psychoneurotic personality." Another letter is from Dr. G. R. Diessner of the Mayo Clinic and is dated December 16, 1963. Dr. Diessner reports that after a complete examination of Yawitz "a diagnosis of tension headaches was again made. Mr. Yawitz admits to a great deal of tension, some depression, and frustration."

Dr. Joseph S. Shuman, a neuropsychiatrist, examined Yawitz on October 1, 1971, on behalf of the Social Security Administration. His report confirms that Yawitz suffers from "intractable headaches" which "are inconsistent, but also unpredictable." The diagnosis is that he has a "Chronic Anxiety Reaction with depressive features." The prognosis is said to be "not good in the light of the long history and poor response to treatment." A review of all the medical evidence clearly shows that Yawitz often suffers from extremely severe headaches but that he is otherwise healthy for his age.

Mr. Samuel Bernstein, a vocational expert with a master of education degree in the field of guidance also testified at the hearing for the Social Security Administration. Mr. Bernstein responded to a number of hypotheticals regarding what type of work Yawitz could engage in in spite of his headaches, including a question which assumed the claimant's age, experience, education and migraine headaches. Mr. Bernstein stated that if Yawitz could communicate during one of these headache attacks he could function properly in an unstructured outside sales position such as an insurance salesman. The expert said that Yawitz could make premium sales, could sell merchandise, could sell textiles and could sell auto parts due to past work experience. He stated that there were numerous jobs of these types in the particular area. The major thrust of the expert's testimony in this regard was that in these types of sales positions Yawitz could be more or less his own boss and could make appointments when he felt up to it. However, under questioning from the claimant's attorney, he admitted that if Yawitz could frequently not keep appointments, it would interfere with employment.

The legal standards to be applied to this type of appeal were originally carefully set out in Celebrezze v. Bolas, *supra*, 316 F.2d at 500–501. They have since been followed by this Court and have recently been stated in Garrett v. Richardson, 471 F.2d 598, 599–600 (8th Cir. 1972). Those standards are:

(a) the claimant has the burden of establishing his claim; (b) the Act is remedial and is to be construed liberally; (c) the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence; (d) substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (e) it must be based on the record as a whole; (f) the determination of the presence of substantial evidence is to be made on a case-to-case basis; (g) where the evidence is conflicting it is for the Appeals Council on behalf of the Secretary to resolve those conflicts; (h) the statutory definition of disability imposes a three-fold requirement (1) that there be a medically determinable physical or mental impairment which can be expected to [result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months], (2) that there be an inability to engage in any substantial gainful activity, and (3) that the inability be by reason of the impairment; (i) such substantial gainful activity is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training, and experience; (j) the emphasis is on the particular claimant's capabilities and on what is

reasonably possible, not on what is conceivable; and (k) it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within the range of the claimant's capacity remains for him to exercise. (Footnote omitted.)

Of special significance to this case is the test set forth above regarding the three-fold requirement for a determination of disability: (1) a medically determinable physical or mental impairment which has or will last at least twelve months, (2) inability to engage in any substantial gainful activity, and (3) the inability must be by reason of the impairment.

In the instant case there is no doubt that Yawitz has a medically determinable physical or mental impairment. The testimony of his personal physician and written reports from three other doctors firmly establish this. He has severe migraine headaches and will continue to have them probably as long as he lives.

It is equally clear that if Yawitz cannot engage in substantial gainful activity, it is because of the headaches. There is simply no evidence of any other reason, and the parties agree that if he cannot work, it is due to the headaches.

The real crux of the matter, then, is whether or not Yawitz has an "inability to engage in any substantial gainful activity." In finding that Yawitz did not have such an inability the administrative law judge relied on two lines of reasoning. First, he emphasized the evidence that Yawitz can and does drive, that he has gone on cross-country camping trips and that he does some fix-up and repair work around his home. From this the conclusion is drawn that Yawitz was able-bodied enough to engage in substantial gainful activity.

■ It should first be noted that "the mere fact that plaintiff can drive a car and is mobile does not establish that he can engage in substantial gainful activity." Robinson v. Richardson, 360 F. Supp. 243, 250 (E.D.N.Y.1973). Addi-

tionally, the problem with the administrative law judge's analysis is that it totally ignores all the evidence concerning the limited amount of driving that Yawitz does; that frequently Yawitz and his wife did not travel at all on any given day or only a short distance because of his headaches; that Yawitz worked around the house only when he was physically able to; that frequently he was not able to do anything; that his conversion of the school bus to a camper was taking much longer than would normally be expected because he felt physically able to work on it only sporadically. In short, when the record as a whole is examined it can be seen that the fact that Yawitz drives, goes camping and works around the house on occasion is not substantial evidence that he can engage in substantial gainful activity. The entire record reveals many limitations on the claimant's activities totally ignored by the administrative law judge in making his decision.

[I]f . . . reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are . . . bound to decide against the Secretary.

Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).

■ The administrative law judge in his written decision also relied heavily on the fact that Yawitz had been employed and earned a good income for at least thirty years, during which time he had complained of and been bothered by his migraine headaches. Again, however, when the entire record is reviewed it can be seen that this is not substantial evidence of Yawitz' ability to engage in gainful activity at the present time. First, reliance on this fact ignores the evidence that Yawitz generally worked for relatives or close friends or himself. It ignores the evidence that he has quit or has been removed from over eight positions between 1932 and 1969, and that in every case it was because he could not produce reliably due to his headaches.

More importantly, it ignores the uncontroverted evidence that the headaches have been *increasing* in frequency and severity. Certainly a condition which was tolerable at one time can deteriorate to the point that it becomes intolerable. This is not like the case relied on by the Secretary, Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965); for in that case there was no evidence that the headaches experienced by the claimant were greater in intensity or severity at the time of the hearing than at the time he was gainfully employed. In short, we are not convinced that the fact that Yawitz has worked in the past and earned a good living is substantial evidence to support a finding that he is now capable of substantial gainful activity in light of the other evidence in the record regarding his present inability to perform adequately on the job due to the increase in headache activity.

Although not expressed in so many words, the final line of reasoning used by the administrative law judge to support his conclusion seems to be based on the testimony of the vocational expert. As noted earlier in this opinion, this expert stated his opinion that there were certain types of outside sales jobs for which Yawitz would be qualified assuming that he could communicate during a headache attack. The judge then combined this opinion testimony with his own observations of Yawitz during the hearing and with Dr. Shuman's observations during his examination of the claimant to conclude that Yawitz can communicate during these attacks, and, therefore, can hold down an outside salesman's position.

While we respect the opinion of the vocational expert, we simply cannot agree that this, by itself, provides substantial evidence from which to conclude that Yawitz is capable of engaging in substantial gainful activity in view of the overwhelming evidence to the contrary in the record.

The appellant Yawitz met the burden of proof in the hearing before the administrative law judge and established that he is disabled within the meaning of the Social Security Act. There is no substantial evidence on the record as a whole to support the Secretary's denial of disability benefits. We, therefore, reverse the judgment of the district court and remand this case with directions to grant summary judgment for the plaintiff.