MEMORANDUM OPINION

Gaylin W. GOTSCHALL, Plaintiff,

v.

Caspar WEINBERGER, Secretary, Department of Health, Education, and Welfare, Defendant.

Civ. No. 73-0-436.

United States District Court,
D. Nebraska.

Feb. 25, 1975.

———◆———

Walter J. Matejka, Omaha, Neb., for plaintiff.

William K. Schaphorst, U. S. Atty., Michael L. Schleich, Asst. U. S. Atty., Omaha, Neb., Paul P. Cacioppo, Regional Atty., Caroline McB. French, Deputy Regional Atty., Dept. of Health, Education and Welfare, Kansas City, Mo., for defendant.

SCHATZ, District Judge.

The complaint in this case was filed by Gaylin W. Gotschall seeking judicial review of a denial by the Secretary of Health, Education and Welfare of the plaintiff's application for a period of disability and disability insurance benefits as provided in 42 U.S.C. §§ 416(i) and 423. A hearing was held by the administrative law judge, who concluded that the initial denial of benefits was correct. This decision was affirmed by the Appeals Council. Thus, the plaintiff has exhausted his administrative remedies and jurisdiction of this Court is present under 42 U.S.C. § 405(g).

The matter is before the Court upon cross motions for summary judgment. The issue to be determined is whether the plaintiff has suffered a "disability." The findings of fact by the administrative law judge, if supported by substantial evidence on the record as a whole, are conclusive, Yawitz v. Weinberger, 498 F.2d 956 (8th Cir. 1974). The burden is on the plaintiff to establish his right to disability benefits and this burden never shifts, Miller v. Finch, 430 F.2d 321, 323-4 (8th Cir. 1971). However, the Court must bear in mind that at the hearing it was the duty of the administrative law judge to inquire into the claims of the plaintiff in a manner that fully and fairly developed the facts, Sellars v. Secretary of H.E.W., 458 F.2d 984, 986 (8th Cir. 1972).

The plaintiff alleges that he has been disabled from and after April 20, 1971, as a result of neck, back and leg injuries suffered in an automobile accident on that date. Following the accident, the plaintiff was taken by ambulance to a hospital where he was seen by his own physician, Doctor Rundquist, and released without being kept overnight. X-rays disclosed no fractures. Doctor Rundquist's diagnosis of the plaintiff was: degenerative arthritis of the fifth, sixth and seventh cervical vertebrae with ossification and longitudinal ligamentous

strain; degenerative arthritis of the lumbar vertebrae with recent injury adding to discomfort. In June of 1971, Doctor Rundquist referred the plaintiff to an orthopedist, Doctor Hamsa, for examination. Reports of four visits of the plaintiff to Doctor Hamsa are recorded in the evidence received at the hearing. After the first visit in June 1971, Doctor Hamsa characterized the plaintiff's condition as follows:

> This patient represents a regressing sprain of the cervical, thoracic and lumbosacral spine, in a spine characterized by congenital changes consisting of hemisacralization of lumbar 5 on the right side, spondylolysis of lumbar 5 and increased lumbosacral angle producing chronic strain, an element of degenerative arthritis of the spine and a left lateral elbow epicondylitis.

> This type of spine, as characterized by the present x-rays, which show evidence of changes pre-existing this injury, is predisposed to strain, sprain or injury. Whereas the majority of sprains of this type tend to become quiescent in six to twelve weeks, as a general rule, with the presence of pre-existing changes in the spine and a congenital malposture, these symptoms will be markedly prolonged, in all likelihood. *He should therefore, stay as active as possible and even carry out light work, if such is available. Weight reduction is very desirable.* (Emphasis supplied.)

The plaintiff was seen again by Doctor Hamsa on August 16, 1971, with no change in condition. The results of a third examination on January 31, 1972, were reflected in a letter from Doctor Hamsa to Doctor Rundquist, stating in part:

> Orthopedically, this obese malposture with prominent abdomen, weight, 166 pounds, shows a free cervical spine, without complaints. Dorsolumbar motion is 75 per cent normal, reproducing lumbosacral aching. Extremity joints are free. On forward flexion of the spine, a slight left lumbar scoliosis is present, doubtless secondary to his congenital anomaly. Left straight leg raising reproduces some lumbosacral aching. Tenderness is vaguely localized over the first sacral segment only.

> *I have suggested this patient continue on all activity possible,* and that he expect a more permanent level of recovery at one year following his accident. He should continue his abdominal muscle exercises, and should certainly effect some weight reduction. * * * (Emphasis supplied.)

Doctor Hamsa saw the plaintiff again on August 14, 1972, as a result of which he found that the plaintiff's spine showed good motion and flexion and lateral bending, but that the plaintiff disliked extension "primarily because he is fearful of falling backward, and not particularly because of pain." Further, Doctor Hamsa found that the plaintiff was able to accomplish ninety degree straight leg raising, that his anterior thigh muscle stretch was painless, but that there was tenderness over the lumbosacral joint, midline only. Finally, he assigned the plaintiff a permanent partial disability of twenty to twenty-five per cent.

The plaintiff alleges that injuries to his neck, middle back, lower back and left leg sustained in the automobile accident have caused pain in these areas of his body which pain has prevented him from working for a continuous twelve-month period commencing April 20, 1971. The plaintiff testified at the hearing and related that the pain in the left leg was generally a numbness which occurred almost daily at a frequency of two to three times a day and lasted "momentarily." It was relieved for three to four hours by medication. The plaintiff also stated that the low back pain was relieved by medication; that the low back, middle back and neck pain never occurred together; that about three to four times per day the low back pain radiated into his legs; and that he was often wakened by the pain at night, al-

though five to six hours of uninterrupted sleep was common. The plaintiff further testified that he could either sit or stand for three to four hours at a time, although bending, stooping or squatting was painful; and that he could walk approximately one quarter of a mile without stopping, but that the climbing of stairs was very difficult. His daily activity consisted of helping with household chores which did not involve serious lifting or exertion.

At the time of the automobile accident, the plaintiff was employed as an assembler and inspector of automobile seats, and had been so employed for the preceding three years. He has not been employed since the accident. Prior to his last job, he worked for approximately seven years as a mechanic with a manufacturing company in which he did primarily motor repair work. His other prior work experience was as an auto mechanic and as a farmer. At the hearing, the administrative law judge called a vocational expert, Doctor McCleery, to testify concerning possible employment opportunities for the plaintiff. A series of hypothetical questions was put to Doctor McCleery by the administrative law judge in which he asked whether, assuming the following set of facts, there were any jobs the plaintiff could perform in the Nebraska region:

1) That the plaintiff could engage in light or sendentary activity;

2) That the plaintiff's impairment was as described in his own testimony;

3) That the plaintiff's impairment was as described in the medical reports;

4) That the facts were as in question 3 and also that the plaintiff had a twenty to twenty-five per cent permanent partial disability;

5) That the facts were as in questions 3 and 4 and also that the plaintiff was unable to return to his former work as of May 1, 1972.

Initially, Doctor McCleery stated that based upon the evidence received at the hearing, it was his opinion that the plaintiff could not return to his former work either as an automobile assembler and inspector or as an auto mechanic. In response to the above five hypothetical questions, Doctor McCleery enumerated a number of jobs available in the plaintiff's region which the plaintiff could accomplish—e. g., in the category of light activity: small appliance repairman, sales clerk, taxi-cab driver, watchman, and others; in the category of sedentary activity: rental agency clerk, mail sorter, telephone dispatcher and others.[1] Based upon all the evidence the administrative law judge found that the plaintiff had not suffered a disability so as to entitle him to benefits under the Social Security Act.

"Disability" is specifically defined by statute to mean an: "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not more than twelve months. * * *" 42 U. S.C. § 423(d)(1)(A). The Courts have held that this statutory definition imposes a three-fold requirement:

1) A medically determinable physical or mental impairment which has or will last at least twelve months,

2) inability to engage in any substantial gainful activity, and,

3) the inability must be by reason of the impairment.

---

1. A sixth hypothetical question was asked and answered as follows:
   Q. ". . . (A)ssuming the claimant's age, education, and past work experience and further assume that I find in the evidence that . . . the claimant is unable to engage in substantial work activity for a continuous twelve month period, are there any jobs the claimant can do . . . and do such jobs exist in the region?
   A. Under this hypothesis there is not work that the claimant could perform on a regular gainful level."
   The opinion of the administrative law judge leaves no doubt that his findings of fact do not support the hypothesis in this question.

Yawitz v. Weinberger, *supra*, 498 F.2d at 960.

The administrative law judge found, and there is substantial evidence to support the finding, that from and after April 20, 1971, the plaintiff was suffering an impairment to his spine. The administrative law judge did not specify the duration of the impairment, but the evidence is clear that it did extend for a continuous twelve-month period, and that thus, the first requirement above was satisfied. The real issue in this case is the severity of the plaintiff's impairment—*i. e.*, did it cause him to be unable to engage in any substantial gainful activity? The administrative law judge found that it did not, and this decision is supported by substantial evidence on the record as a whole. The plaintiff's argument is that the severity of the pain he suffers prevents him from working. His own testimony concerning the range of movement he can tolerate—*e. g.*, sitting or standing for at least three to four hours—and the fact that much of the pain can be controlled by medication, certainly cast doubt on his claim. The reports of the plaintiff's orthopedist, Doctor Hamsa, in which the plaintiff is repeatedy encouraged to undertake all possible activity, also cast doubt upon his claim. The amount of discomfort alleged by the plaintiff certainly permitted the undertaking of light or sedentary activity, and a vocational expert called by the administrative law judge in conformity with Garrett v. Richardson, 471 F.2d 598 (8th Cir. 1972), enumerated several jobs in the light and sedentary activity categories which were available in the plaintiff's region. Thus, the second requirement above is not met, since it is clear that the plaintiff was not prevented from engaging in substantial gainful activity as a result of the impairment.

The Court concludes, therefore that there is substantial evidence in the record as a whole to support the findings of the administrative law judge in his denial of the claim of the plaintiff. The motion of the defendant for summary judgment should be granted, and the motion of the plaintiff for summary judgment should be overruled. A separate order, accordingly, is entered this date.