Geneva NORTHCUTT, Appellant,

v.

Joseph CALIFANO, Secretary of Health, Education and Welfare of the United States, Appellee.

No. 77–1977.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1978.

Decided July 20, 1978.

Robert B. Hector, Bootheel Area Legal Assistance Program, Caruthersville, Mo., for appellant.

Wesley D. Wedemeyer, Asst. U. S. Atty. (argued) and Robert D. Kingsland, U. S. Atty., St. Louis, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HENLEY, Circuit Judges.

LAY, Circuit Judge.

Geneva Northcutt appeals from an order of the district court sustaining the decision of the Secretary of Health, Education and Welfare to deny her application for disability insurance benefits under the Social Security Act. 42 U.S.C. § 423. After being denied relief by an administrative law judge (ALJ) and the Appeals Council of the Social Security Administration, claimant brought this action in district court seeking review of the Secretary's determination.

The district court, basing its decision upon a report and recommendation of a magistrate, granted the Secretary's motion for summary judgment and dismissed the complaint. We reverse the judgment of the district court and remand to the Secretary for further proceedings.

Mrs. Northcutt was born on October 14, 1919, and has an 8th grade education. She worked in the garment industry from 1952 to 1974, first as a sewing machine operator and later as a cutter. For the last year of her employment she worked as a bundler, sorting and bundling materials used in the factory. During the last few weeks of her employment she was required to unload freight in packages weighing 40 to 50 pounds.

Claimant testified at the hearing before the ALJ that in September 1974 she was forced to quit her job because she suffered constant severe pain in her back, spine and hips. She further testified that at the time of the hearing she continued to suffer from constant severe pain and was unable to sit or stand for long periods of time. She stated that she was able to do some light housekeeping work and to drive a car for short distances. Claimant's husband and several neighbors and friends offered testimony corroborating the claimant's statements regarding the degree of pain she suffered.

A number of medical reports were introduced indicating that claimant had been hospitalized in 1971, 1972 and 1974 for treatment of back pain. A report by claimant's treating physician, Dr. W. R. McCoy, dated March 15, 1976, included a diagnosis of generalized osteoarthritis and degenerative disc disease.

A vocational expert, Dr. Thomas Boyd, testified at the administrative hearing. In response to a hypothetical question by the ALJ which set out claimant's physical condition, including the constant severe pain she had stated she suffered, Dr. Boyd testified that in his opinion claimant would be unable to engage in gainful employment. In response to a hypothetical question setting out claimant's physical condition with-

out including any consideration of pain, Dr. Boyd stated that although claimant could not do heavy work she would be able to successfully engage in bench assembly jobs as well as a number of jobs in the boot and shoe industry that were available in the geographic area in which she resided.

The ALJ concluded that claimant was not entitled to receive disability insurance benefits because "claimant's impairments when considered alone or in combination are not of such severity as to prevent her from engaging in substantial gainful activity." The ALJ apparently discredited testimony regarding the pain suffered by claimant because there was "no objective medical evidence indicating that claimant suffers from a spinal impairment of such severity as to cause disabling pain."

The fundamental issue before us is whether there exists substantial evidence on the record as a whole to support the finding that Mrs. Northcutt can engage in substantial gainful activity. More specifically, on the present record the issue is whether the ALJ properly discounted the claimant's evidence of disabling pain in reaching his decision.

Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the administrative factfinder must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant. *See Thorne v. Weinberger*, 530 F.2d 580, 583 (4th Cir. 1976); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). While the claimant has the burden of proving that

the disability asserted results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between a physical impairment and the claimant's subjective pain need not be produced. *See Klug v. Weinberger*, 514 F.2d 423, 427 (8th Cir. 1975). There is no question that pain can cause disability within the meaning of the Social Security Act. *See Yawitz v. Weinberger*, 498 F.2d 956, 960–61 (8th Cir. 1974); *Murphy v. Gardner*, 379 F.2d 1, 7 n.8 (8th Cir. 1967).

In the present case the ALJ discounted the claimant's evidence of pain on the ground that there was no evidence of any severe spinal impairment that would cause disabling pain. Under our previous decisions, *see, e. g., Murphy v. Gardner, supra* at 5–7, this analysis places too much emphasis on the need to prove disability by objective proof. Of course under the Act there must be medical evidence of physical or mental impairment.[1] Disregard of a claimant's subjective complaints of pain, however, is not justified solely because there exists no objective evidence in support of such complaints. Here claimant's testimony of pain and disability has been corroborated by her husband and other lay witnesses. The evidence shows that the claimant, prior to her disability, had been a good worker, doing heavy work at various jobs in the garment factory. There is no finding or evidence that suggests she is malingering or not telling the truth. The basis for denial of her claim is the ALJ's erroneous requirement that claimant prove a severe physical impairment that would cause debilitating pain[2] and his acceptance

---

1. There was ample evidence of this. Dr. McCoy examined claimant and on March 15, 1976, reported the following diagnoses:

    (1) Osteoarthritis, generalized—especially low spine, knees and right hip
    (2) Headaches, intermittent, etiology undermined
    (3) Possible hypothyroidism
    (4) Nervousness
    (5) Degenerative disc disease area of L4.
He also states:

    I feel this woman has enough arthritis disability to qualify for some help.

2. Other circuits have long adhered to the proposition that pain unaccompanied by objective findings may nevertheless support a claim for benefits. *See Sayers v. Gardner*, 380 F.2d 940, 948 (6th Cir. 1967); *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965); *Ber v. Celebrezze*, 332 F.2d 293, 299 (2d Cir. 1964); *Page v. Celebrezze*, 311 F.2d 757, 762–63 (5th Cir. 1963). In *Sayers* the court observed:

of the vocational examiner's opinion that the claimant may engage in substantial gainful employment. The difficulty with the testimony of Dr. Boyd, the vocational expert, is that his conclusion that claimant is able to perform substantial gainful work was based on a hypothetical question which totally omitted claimant's undisputed assertions with regard to pain.[3]

█ The claimant is entitled to "a full and fair hearing" under the Act. Our review reflects that the ALJ did not give proper evaluation to all of the claimant's evidence because of an erroneous view of the law which required a claimant to prove pain that resulted as a direct consequence of a severe physical impairment. This was clearly erroneous. The Act requires a complete evaluation of all of the evidence both objective and subjective. On this basis we find it imperative to a fair hearing that the Secretary reappraise the totality of the evidence and make new findings in light of all of the evidence. *Cf. Daniels v. Mathews,* 567 F.2d 845, 848 (8th Cir. 1977).

The judgment of the district court is therefore reversed with directions that the cause be remanded for further administrative proceedings consistent with this opinion.

VAN OOSTERHOUT, Senior Circuit Judge, dissenting.

I respectfully dissent. In my view all of plaintiff's contentions for disability insurance were fully and fairly considered in the administrative proceedings. The United States Magistrate in his recommendations, which were approved and adopted by Judge Meredith, analyzes the evidence and findings of the administrative law judge in detail. The credibility findings of the administrative law judge, who saw and heard the witnesses, are entitled to great respect. I am not persuaded that his findings, which were approved by the Appeals Council, the magistrate and Judge Meredith, lack substantial evidentiary support or were induced by any erroneous view of the law.

I would affirm the judgment of dismissal.

---

The second reversible error committed by the Hearing Examiner was his holding that the impairment must be medically determinable and in order to be medically determinable, "the existence of the impairment must be established by objective medical, clinical, or laboratory evidence." The Hearing Examiner stated further, that pain is only a subjective symptom that cannot be accurately measured, and, in itself, is not disabling; and he concluded his decision in holding that appellant could not be disabled through pain alone by stating: "The Hearing Examiner finds that there is no objective medical evidence to support a conclusion that the claimant is suffering pain sufficient to make her disabled within the meaning of the Act.

The holding by the Hearing Examiner that "medically determinable" means "supported by objective clinical or laboratory evidence" is clearly erroneous.

380 F.2d at 949.

3. Dr. Boyd's answer to another hypothetical question which included claimant's described pain was much different:

A. Yeah. People who suffer from severe constant pain, it's been my experience, have to give their full attention to that pain, and they can't then function in any meaningful way in gainful employment or even in their own lives.

Q. Let me—With her same complaints of severe pain, could she do any other kinds of work that you know of that exist in our economy in significant numbers?

A. Not with a degree of pain that's included in the hypothetical question. I mean, this kind of pain—I mean, I've seen people that feel that they can't even get into a doctor's office because they had so much pain. Okay?