**Doris MEEK, Plaintiff,**

**v.**

**Joseph CALIFANO, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 78–L–13.**

United States District Court, D. Nebraska.

March 23, 1979.

---

John B. Milligan, Lincoln, Neb., for plaintiff.

Richard J. Nolan, Asst. U. S. Atty., Lincoln, Neb., for defendant.

## MEMORANDUM

URBOM, Chief Judge.

The plaintiff, Doris Meek, is seeking reversal of the final decision of the Secretary of Health, Education and Welfare which denied her disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and supplemental security income benefits based upon disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Jurisdiction is properly invoked pursuant to 42 U.S.C. § 405(g).

The plaintiff filed her claims with the Social Security Administration on June 30, 1976, declaring that she suffered from back problems and an ear infection. At the hearing before the administrative law

judge, which followed the initial denial of benefits and reconsideration of that original decision, the plaintiff claimed she became disabled on June 18, 1976. She explained that she had worked as a machine operator in a sewing factory from December, 1975, until June 15, 1976; that before that she worked in a rest home for about five weeks; that she was employed at another sewing plant from June 8, 1975, to September 23, 1975, served as a nurse's aide at the Nebraska City Manor from September, 1974, to January, 1975, and at the Ritt Community Hospital from November, 1973, to September, 1974; and that she had worked as a waitress in several cafes and several years previously had loaded and unloaded meters for painting at American Meter.

She claimed at the hearing that she could not get up with ease and that she needed to apply heat to her back for two to four hours after work to obtain relief from the back pain, and that weather, lifting, and walking made the pain worse. She also complained of occasional dizziness and an inability to focus her eyes while operating her machine and stated that she suffers from a severe rash with open and bleeding sores.

The administrative record contains several affidavits executed in October, 1977, and submitted after the administrative law judge rendered his decision but before that decision was affirmed by the Appeals Council. In one of these affidavits the plaintiff states that she lost her job as a nurse's aide in September of 1974 because of drug and alcohol abuse and that although she sought psychiatric counseling and joined Alcoholics Anonymous, she was not reinstated. She states that she resigned from her next job in January, 1975, because "back pain precluded [her] from performing the job's lifting requirements." Transcript, p. 147. She claimed that she had not been drunk for seven months. Two other affidavits, executed by the plaintiff's son and an acquaintance, indicate that she did consume large amounts of alcohol following her husband's death in 1967.

The plaintiff was seen by several doctors. In August of 1973 she was diagnosed as evidencing a passive-aggressive personality and some dependence on alcohol. She injured her back while working as a nurse's aide in 1974. Dr. Thomas Largen concluded that she had sustained a lumbosacral strain. She was admitted to a hospital for intensive physical therapy, to which she responded fairly well. Her problems were complicated by a duodenal ulcer and bladder problems, and the bladder problem was treated surgically during this hospitalization. This physician, upon viewing an x-ray of the plaintiff's lower spine, noted minimal osteoarthritic changes of the lumbar and thoracic spine and minimal old compression deformities. (Discharge summary 7–11–74, Transcript, p. 115)

On July 13, 1976, Dr. W. G. Nelson, a doctor of osteopathy, found nasal congestion but no ear infection. Although he ran no diagnostic procedures and apparently did not examine the plaintiff, he concluded that she should not lift items over ten pounds, that she could not walk more than one or two hours a day, that she could not sit more than two hours, and that she could not use her feet for repetitive movements. Transcript, pp. 108–110.

Dr. William E. Lundak, a radiologist, reported on September 21, 1976:

"Mild scoliosis of the thoracolumbar spine with hypertrophic spurring and degenerative change in the distal thoracic area is noted." Transcript, p. 120.

Dr. Robert Heins, a psychiatrist, evaluated the plaintiff on September 22, 1976. He believed she responded as one might expect of a patient with an hysterical personality; he also found her moderately depressed. He suggested intensive psychotherapy, which she was then receiving, and concluded that she would benefit from training as, for example, a nurse's aide, "if her low back pain proves not to be based on physical abnormality." Transcript, p. 122. According to an examiner of the Disability Determinations Section of the Social Security Administration, Dr. Heins stated on September 23, 1976:

". . . that patient could manage funds, and that she should be emotionally

able to tolerate any type of work without any significant restrictions. . . . [S]he could perform at least simple routine, repetitive tasks on a sustained basis without supervision and in a productive manner." Transcript, p. 123.

Mrs. Meek was seen by Dr. Robert W. Ehrlich during the September, 1976, evaluation process. Dr. Ehrlich, a general surgeon, noted that she complained of low back pain radiating down her right side, an earache and decreased hearing in the left ear, and nervousness. He found some tenderness over the lower thoracic and upper lumbar regions of the back; he also noted some muscle spasms. Transcript, p. 125.

Dr. Largen, who is a general practitioner, completed on September 7, 1976, a "psychiatric questionnaire," in which he indicated his analysis of the plaintiff's ability to work and to relate to other people; he had last seen her in June, 1976. His report indicated that her ability to maintain concentration on a simple task and to function independently was poor, but that her ability to comprehend and follow simple instructions and to relate appropriately to supervisors and co-workers was good. She could not perform complex tasks well but her ability to perform simple, repetitive and varied tasks was "fair," according to Dr. Largen. He also diagnosed her as suffering from Meniere's Syndrome, a disease of the inner ear. Transcript, pp. 112–114.

The November 17, 1976, radiology report from St. Mary's Hospital (Transcript, p. 130; set out in full, Transcript, p. 132), in addition to finding a slight compression deformity of segments of the spine, reiterated the previous findings of spurring. The radiology report of January 5, 1977, suggested duodenitis. Transcript, p. 133.

Dr. Rodney Koerber reported on November 24, 1976, that he could not "find much objectively wrong with [the plaintiff]." She was seen again by Dr. Koerber in December of 1976 for complaints of dizziness, epigastric distress, and mild ear infection. Transcript, p. 129.

The plaintiff was seen by another psychiatrist, Dr. George Hachiya, on March 1, 1977. Dr. Hachiya stated:

"As to a diagnostic impression, I feel that Ms. Meek does show elements of a passive-aggressive personality. Her presenting complaint is secondary to arthritis of the spine if this was indeed shown on the x-ray examination. On the other hand there is evidence of a psychophysiological disorder, muscular skeletal type.

"In terms of the psychological aspect of her problem, I do not feel that she is totally disabled from a Social Security Act point of view. Because of her reported severe back pain an orthopedic evaluation is recommended. Also an ear, nose, and throat evaluation for the periodic vertigo." Transcript, p. 135.

On April 4, 1977, Dr. Koerber wrote: "Dorris Meek has alleged disability from a chronic back disorder. There are very few objective findings, but there are a lot of aches and pains connected with this. "As to when she will be able to work is indefinite at this time." Transcript, p. 142.

On June 24, 1977, Dr. James Stanosheck reported that the plaintiff had "rather severe degenerative osteoarthritis of the dorsal spine with curvature of the spine in this area as well as chronic intermittently draining ear infection. She is currently under treatment for this and is due to return in July for followup." Transcript, p. 151. This report was not placed in the record until the administrative law judge's decision had been appealed.

On August 8, 1977, Dr. Richard Crotty reported that the plaintiff suffered from severe recurrent erythema multiforme, but that she could "go back to most activities now." Transcript, p. 152. This report also was not a part of the record until after the administrative law judge rendered his decision.

The administrative law judge viewed the psychiatrists as having concluded that the plaintiff's complaints were "largely hypochondriacal;" it was his conclusion that the "medical evidence does not demonstrate a

condition either mental or physical which is so severe it would constitute 'disability' under the Act and Regulations." Transcript, p. 34. In his findings he stated:

"5) The claimant has chronic low back pain of a moderate degree.

"6) The claimant is unable to perform heavy manual labor or work requiring frequent bending, lifting, or stooping, but she is able to function otherwise satisfactorily.

"7) Considering the claimant's residual physical capacity, she should be able to return to her former employment as a machine operator in a sewing factory.

"8) The claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision which has either lasted or could be expected to last for at least 12 months.

"9) The claimant was not under a 'disability' as defined in the Social Security Act, as amended, at any time prior to the date of this decision." Transcript, p. 35.

To prevail, the plaintiff must demonstrate that she was under a disability, as that term is used in the two portions of the Social Security Act upon which she relies. Section 423(d) defines disability:

"(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\* \* \* \* \* \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

\* \* \* \* \* \*

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

A similar definition is found in Tit. XVI, 42 U.S.C. § 1382c.

The plaintiff bears the burden of proving her entitlement to the benefits she seeks. *Timmerman v. Weinberger*, 510 F.2d 439, 443 (8th Cir. 1975). The final decision of the Secretary of Health, Education and Welfare cannot be disturbed by this court if supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

"Our Court has stated that to meet the statutory definition of disability, the claimant must fall within the threefold requirement '(1) that there be a medically determinable physical or mental impairment which can be expected to [result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months], (2) that there be an inability to engage in any substantial gainful activity, and (3) that the inability be by reason of the impairment.' *Yawitz v. Weinberger*, 498 F.2d 956, 959 (8th Cir. 1974) (quoting from *Garrett v. Richardson*, 471 F.2d 598, 599–600 (8th Cir. 1972)).

"In reviewing the record to ascertain whether there is substantial evidence to support the Secretary's finding that a claimant has not met this threefold requirement the court should look at four elements of proof:

(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on sub-

sidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age.

*Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir. 1972).

"In the instant cases, as in most, the major area of contention centers around the second prong of the threefold requirement: that there be an inability to engage in any substantial gainful activity. It is clear that the claimant need not be a total 'basket case' before the courts find that there is an inability to engage in substantial gainful activity. *See, e. g., Yawitz v. Weinberger, supra.* The question must be looked at in a practical manner, and mere theoretical ability to engage in substantial gainful activity is not a sufficient basis to deny benefits. The test is whether a particular job is realistically within the physical and mental capabilities of the claimant. *Thomas v. Richardson,* 371 F.Supp. 362, 364 (S.D. N.Y.1974); *Lebron v. Secretary of H. E. W.,* 370 F.Supp. 403, 407 (D.P.R.1974). "On the other hand, it is clear that 'it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within the range of the claimant's capacity remains for him to exercise.' *Yawitz v. Weinberger, supra,* 498 F.2d at 960 (quoting from *Garrett v. Richardson, supra,* 471 F.2d at 600). . . ."

*Timmerman v. Weinberger,* 510 F.2d at 442.

Three cases from the United States Court of Appeals for the Eighth Circuit are instructive. In *Timmerman,* there was no medical evidence that the plaintiff could not be gainfully employed and the claim was properly denied. In *Yawitz v. Weinberger,* 498 F.2d 956 (8th Cir. 1974):

"The medical testimony and evidence all tended to support Yawitz. Dr. Lewis E. Littmann has been Yawitz' personal physician since 1940. He testified to the effect that the headaches were real even though it was hard to find any objective signs that Yawitz was having one except for perspiration and slightly increased blood pressure. Yawitz has undergone every kind of test to determine what may be causing the headaches. All these tests have had negative results. No medication has worked consistently to relieve the pain. Dr. Littmann maintained that no one really knows what causes tension headaches of this kind, although he could and did describe the physiological occurrences which take place in the blood vessels in the head which result in the pain that is felt. The gist of Dr. Littmann's testimony was to the effect that Yawitz' headaches were apparently getting more frequent and more severe; that their onset was unpredictable; and that when one struck it made any work Yawitz was doing erratic."

498 F.2d at 958.

Two other doctors stated that Yawitz suffered from headaches and had, additionally, some psychological problems. The medical evidence was corroborated by Yawitz' description of his subjective complaints, as well as his work record. He had worked for close friends and relatives, but had quit or been removed from a series of jobs "because he could not produce reliably due to his headaches." 498 F.2d at 960. The headaches had increased in frequency and intensity.

In *Northcutt v. Califano,* 581 F.2d 164 (8th Cir. 1978), the United States Court of Appeals for the Eighth Circuit held that the Secretary of Health, Education and Welfare erred in discounting a claimant's assertion of disabling pain. The claimant had worked as a sewing machine operator until 1974, when she became a bundler and sorter. The latter job entailed lifting packages weighing 40 to 50 pounds. She claimed she had severe back pain, could not stand or sit for long periods of time, but could do light housework. Her husband, neighbors and friends corroborated her account. She was hospitalized for back pain three times and her physician diagnosed her as suffering from "generalized osteoarthritis and degen-

erative disc disease." 581 F.2d at 165. A vocational expert testified that the plaintiff could do light work.

"The ALJ concluded that claimant was not entitled to receive disability insurance benefits because 'claimant's impairments when considered alone or in combination are not of such severity as to prevent her from engaging in substantial gainful activity.' The ALJ apparently discredited testimony regarding the pain suffered by claimant because there was 'no objective medical evidence indicating that claimant suffers from a spinal impairment of such severity as to cause disabling pain.'

\* \* \* \* \* \*

"In the present case the ALJ discounted the claimant's evidence of pain on the ground that there was no evidence of any severe spinal impairment that would cause disabling pain. Under our previous decisions, see, e. g., Murphy v. Gardner, [379 F.2d 1 (8th Cir. 1967)] supra at 5–7, this analysis places too much emphasis on the need to prove disability by objective proof. Of course under the Act there must be medical evidence of physical or mental impairment. Disregard of a claimant's subjective complaints of pain, however, is not justified solely because there exists no objective evidence in support of such complaints. Here claimant's testimony of pain and disability has been corroborated by her husband and other lay witnesses. The evidence shows that the claimant, prior to her disability, had been a good worker, doing heavy work at various jobs in the garment factory. There is no finding or evidence that suggests she is malingering or not telling the truth. The basis for denial of her claim is the ALJ's erroneous requirement that claimant prove a severe physical impairment that would cause debilitating pain and his acceptance of the vocational examiner's opinion that the claimant may engage in substantial gainful employment. The difficulty with the testimony of Dr. Boyd, the vocational expert, is that

his conclusion that claimant is able to perform substantial gainful work was based on a hypothetical question which totally omitted claimant's undisputed assertions with regard to pain."
581 F.2d at 166–167.

I am satisfied that the administrative law judge's decision here falls within standards defined by the Eighth Circuit Court of Appeals. Unlike any of the other three cases, there was evidence from psychiatrists that the plaintiff responded with hypochondriacal symptoms.[1] The administrative law judge did not appear to have discredited the plaintiff's complaints because of a lack of objective medical support but rather he concluded only that the medical evidence did not demonstrate an ailment sufficiently severe to qualify for benefits. There is no clear evidence of the good working history which was present in Northcutt, supra. See, also, Murphy v. Gardner, 379 F.2d 1, 8 (8th Cir. 1967). No physician has unambiguously stated that the plaintiff is disabled, as occurred in Murphy v. Gardner, supra, and Yawitz v. Weinberger, supra. Dr. Nelson, an osteopath, indicated that Mrs. Meek could sit for only one to two hours; however, he apparently had not examined her or had the benefit of performing any diagnostic tests or procedures. Although Dr. Stanosheck described the plaintiff's condition as "rather severe," he did not indicate that she was unable to do light work, as she had done in the past. Similarly, Dr. Koerber inferred that the plaintiff was not working at the time he drafted his letter of April 4, 1977, but his language is ambiguous, and I cannot say that it necessarily means that the plaintiff is unable to work. There was some corroborative evidence of the plaintiff's complaints by her friend, Ruth Casey, in that the latter testified at the administrative hearing that everything the plaintiff stated was true.

The plaintiff argues that the administrative law judge did not discuss in his evaluation of evidence her subjective complaints of pain, failed to discuss her problems with

---

1. It is true that the psychiatrists deferred to the views of other physicians in judging whether there actually was a physical cause for the back problems.

alcohol, did not consider the reference of Dr. Largen to her decreased ability to concentrate on simple tasks, did not mention her complaints of dizziness, and failed to consider her symptoms in combination instead of singly. The administrative law judge's opinion is brief, but he states that he did consider "all the testimony given at the hearing and the documents described in the List of Exhibits . . ." Transcript, p. 34. He then mentions certain medical evidence which he apparently found significant. The administrative law judge found that the plaintiff was not disabled within the terms of the Act. I cannot say with confidence that he did not consider the evidence referred to by the plaintiff. The administrative law judge's discussion of the plaintiff's psychological status in combination with her physical symptoms tends to show that he did not fail to consider her conditions in combination.

With respect to the plaintiff's ear and sinus problems, there was no medical evidence that these alone or in combination with other problems prevented her from being gainfully employed. Neither psychiatrist believed those problems resulted in total disability. Although the plaintiff claimed she had been hospitalized for drug and alcohol abuse, no evidence demonstrated a disability resulting from this condition. It appears that she was treated for those abuses sometime before the onset of her claimed disability. She does not claim that she continues to misuse drugs or alcohol; in fact, the evidence establishes that she had not been drunk for over seven months prior to the hearing. No physician found this condition debilitating.

The plaintiff contends that she demonstrated that she could no longer engage in light, sedentary work and that the burden of proof shifted to the Secretary to show that jobs which she could realistically perform existed. However, I find substantial evidence to support the Secretary's conclusion that the plaintiff could perform the light work. Therefore, the burden of proof did not shift and it was not incumbent upon the government to offer the evidence which the plaintiff suggests is necessary.

Finally, the plaintiff asserts that the administrative law judge failed to conduct a full and fair hearing and that this was prejudicial, in view of the fact that she was not represented by counsel at that time. She claims that the administrative law judge should have inquired further about the character and severity of her back pain, should have asked for further details concerning her dizzy spells, and should have requested further information about her drinking problem and other emotional troubles. But these symptoms were discussed in the medical evidence which was considered by the administrative law judge and the Appeals Council, and the plaintiff does not indicate in what manner that medical evidence would have been expanded had the administrative law judge inquired further. The plaintiff also complains that the agency judge did not ask probative questions of Mrs. Casey, but again, she does not specify what further information Mrs. Casey could have added.

Judgment will be entered for the defendant.