Gerald FENUS, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

Civ. No. 5–82–48.

United States District Court, D. Minnesota, Fifth Division.

Oct. 26, 1983.

---

Timothy J. McCoy, Grose, VonHoltum, Sieben & Schmidt, Ltd., Minneapolis, Minn., for plaintiff.

James M. Rosenbaum, U.S. Atty. by Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## ORDER

MILES W. LORD, Chief Judge.

The plaintiff, Gerald Fenus, seeks judicial review of a decision of the Secretary of Health & Human Services (Secretary) denying him disability benefits pursuant to 42 U.S.C. §§ 416(i) and 423. Both parties move for summary judgment.

The plaintiff applied for disability benefits initially on November 6, 1978, alleging a work-related back injury. He was denied disability status and reapplied on October 17, 1980, alleging the same injury. The second application was denied initially and again upon reconsideration. At a hearing before an Administrative Law Judge (ALJ), benefits were once again denied. This decision was upheld by the Appeals Council on February 16, 1982.

This court has jurisdiction to review a final decision of the Secretary under 42 U.S.C. § 405(g). Fact findings by the ALJ must be upheld if they are supported

by substantial evidence based on the record as a whole. *Yawitz v. Weinberger*, 498 F.2d 956, 957 (8th Cir.1974). The Supreme Court has defined "substantial evidence" as used in the Social Security Act to be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 957, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

After review of the record as a whole, this court finds that there is not substantial evidence to support the Secretary's decision. Therefore, plaintiff's motion for summary judgment is granted.

The plaintiff is a 30 year old married man with three daughters under ten years of age. He has an 11th grade education, followed by nine months training as an auto mechanic, a type of work in which he has never been employed.

Plaintiff's work history consists mainly of physical labor. Prior to 1974, he was employed as a working foreman, pumping gas, driving a garbage truck and working in a lumber yard. Since 1970, he has worked on and off as a welder and also worked for a short period of time as a car salesperson and selling vacuum cleaners door to door. He found the physical demands of the sales jobs to be too stressful for his back. The plaintiff has not been gainfully employed since his claimed upon injury on March 3, 1978.

The plaintiff's back problems began in 1969 as a result of an auto accident. His condition was aggravated in 1971 due to a work related injury. He claims that he has worked with back pain since 1971. The plaintiff's present injury resulted from attempting to lift a pallet at his job as a welder on March 24, 1978. He bent over and felt something "snap" in his back and states that he experienced acute lower back pain and pain in his right leg. Thereafter, he went to his treating physician, Dr. Wengler, and was diagnosed as having a lumbar disc syndrome. This diagnosis was supported later by the Secretary's consulting physician who found the plaintiff to

have pain due to a possible L5–S1 disc problem.

Among plaintiff's complaints are constant low back pain radiating into his left thigh and calf, numbness in his legs and difficulty sleeping. He can no longer sleep with his wife because his constant movement keeps her awake. He states that he sometimes needs help putting on his socks and cannot get in or out of the bathtub without assistance. He has also given up many physical activities such as bowling, fishing and hiking. The plaintiff says that he is "afraid to try to do anything" because of the acute pain that is generated by physical movement.

MEDICAL EVIDENCE

Upon examination on April 11, 1978, Dr. Wengler found the plaintiff to be suffering from "acute trigger tenderness" at the L5–S1 level. When Dr. Wengler applied pressure to this area of plaintiff's back, the plaintiff suffered an "acute reactive spasm" which caused the plaintiff to drop to the floor on his knees (T. 119). Dr. Wengler also noted upon this examination that plaintiff's range of motion was limited and that his right ankle reflex was absent, even with reinforcement. On April 23, 1978, the plaintiff was admitted to Mount Sinai Hospital where a lumbar myelogram was performed. This procedure uncovered no abnormalities. Despite these negative findings, Dr. Wengler stated that a ruptured disc could be present in the area in question without it showing on the myelogram. Dr. Wengler concluded that the plaintiff was temporarily and totally disabled from gainful employment.

During the ensuing months, Dr. Wengler saw the plaintiff repeatedly. An examination on June 8, 1978, showed that the plaintiff's back condition was unchanged. Dr. Wengler noted that the plaintiff's back was still "acutely tender over the lumbar segments" and that because of this discomfort plaintiff was afraid to do any type of activity (T. 121). On August 2, 1978, plaintiff was once again admitted to Mount Sinai Hospital for testing. An epidural venogram was performed with negative find-

ings. Further hospitalization occurred on August 30, 1978, at which time a repeat epidural block was completed. In addition, plaintiff underwent a steroid injection. In a report dated November 9, 1978, Dr. Wengler stated that plaintiff noted modest relief from the injection shortly after the procedure, but as of November 6 his condition had returned to its former state.

On August 16, 1980, plaintiff underwent a procedure known as a C.T. vertebral disc scan. The results of this procedure showed a "shallow midline, bulging or protruded L4–L5 disc." (T. 130). Dr. Wengler questioned the validity of these results and stated that he was "totally frustrated by Mr. Fenus' lack of improvement and our inability to come up with anything specific for him." (T. 130). Dr. Wengler has also suggested that plaintiff undergo a procedure called chemonucleolysis. The plaintiff has not undergone this treatment in that it is neither approved by the Federal Drug Administration nor available in the United States at the time plaintiff applied for benefits. Dr. Wengler has not recommended surgery on the theory that such surgery in the plaintiff's case would carry too great a risk with little chance of positive results (T. 143). In regard to plaintiff's work capabilities, Dr. Wengler has stated that plaintiff cannot perform repeated bending or stooping and must be in an environment where he can sit and stand periodically. Dr. Wengler further concluded that plaintiff is not able to lift even 10 pounds on any sort of continuing basis (T. 146).

On December 19, 1980, plaintiff was examined by Dr. Paul Wicklund at the request of the Social Security Administration. Dr. Wicklund noted plaintiff's complaints of continual low back pain radiating into the left thigh, calf and foot. It was the impression of Dr. Wicklund that the plaintiff suffered from low back pain and left leg pain on the basis of a possible L5–S1 disc problem. He indicated that plaintiff's prognosis was fair and that prolonged stooping, bending, twisting or heavy lifting would aggravate plaintiff's condition.

ADDITIONAL EVIDENCE

Plaintiff testified at the hearing before the ALJ as to his daily activities and work capabilities. He testified that his daily activities mostly include watching television, some cooking and playing the guitar. Plaintiff stated that he can sit for a maximum of 45 minutes and stand for a maximum of 10–15 minutes. He cannot drive a car for any length of time without stopping to lie down. Plaintiff states that he spends half of an eight-hour day lying down intermittently to relieve his back pain. He takes 10–15 aspirin a day and uses a transcutaneous nerve stimulator for pain control. In response to questions posed by the ALJ, the plaintiff testified that he could not maintain employment because his constant pain would prevent him from concentrating on his job. In addition, plaintiff felt that he could not consistently perform his duties because of his need to lie down for substantial periods of time due to pain.

Also testifying at the hearing was Dr. Joseph B. Steen, Jr., a consulting rehabilitation psychologist. Dr. Steen examined the plaintiff and reviewed the medical documents prior to the hearing. Based upon this examination, Dr. Steen concluded that plaintiff could not return to his former employment since he could not tolerate the physical requirements of that type of job. In addition, Dr. Steen concluded that plaintiff did not have the capabilities needed to perform any other type of sustained gainful activity found in the national economy. Dr. Steen's stated reasons for this conclusion are set forth below:

[O]nce again, his physical tolerances for activity are below that required for sustained gainful employment. There's no question he could perform the aspects of one of those sedentary jobs for any period of time. The period would be rather shortened till he wore down. *We're talking about regular sustained employment,* and he would not be capable of meeting those requirements.

(T. 68) (emphasis added)

DISCUSSION

■ To meet the statutory requirements for disability, it must be shown that the

following conditions have been met: 1) the plaintiff has a medically determinable impairment which has or can be expected to last for a continuous period of at least 12 months, 2) he or she cannot engage in substantial gainful employment, and 3) the inability is by reason of the impairment. *Yawitz v. Weinberger*, 498 F.2d 956 (8th Cir.1974); *Lewis v. Califano*, 574 F.2d 452, 455 n. 1 (8th Cir.1978). The initial burden of proof is upon the plaintiff to show that he cannot return to his former employment. *Davis v. Califano*, 605 F.2d 1067, 1071 (8th Cir.1979). Once the plaintiff has met this burden, the Secretary must establish by a preponderance of the evidence that the plaintiff can perform other substantial activity in the national economy. *Stone v. Harris*, 657 F.2d 210, 211 (8th Cir.1981); *McCoy v. Schweiker*, 683 F.2d 1138 (8th Cir.1982).

■ An ability to engage in substantial gainful activity must be more than theoretical in nature. Plaintiff must be shown to possess capabilities necessary to engage in substantial activity on a sustained and realistic basis. *Cole v. Harris*, 641 F.2d 613, 614 (8th Cir.1981); *Timmerman v. Weinberger*, 510 F.2d 439 (8th Cir.1975).

In the present case, it was conceded by the ALJ that plaintiff is unable to return to his former job. The ALJ found, however, that plaintiff could engage in other gainful activity. In reaching this decision, the ALJ concluded that the "objective medical findings do not show a medical condition that could be reasonably expected to produce symptoms of constant intractable pain." (T. 13). The ALJ also found that the plaintiffs daily activities did not show severe limitations due to pain. It was further noted by the ALJ that the plaintiff had not been to a pain clinic and had not manifested such symptoms as weight loss and muscle atrophy normally found in individuals with severe, intractable pain. Based upon these findings, the ALJ rejected the plaintiff's subjective complaints of pain.

■ It is well established that there need be no direct cause and effect relationship shown between the objective medical evidence and the claimant's subjective complaints of pain. *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir.1978). While there must be some medical evidence of a physical or mental impairment, a claimant's subjective complaints of pain may not be rejected solely because there is a lack of objective medical evidence in support of such complaints. *Id.* at 166. The ALJ must give serious consideration to subjective complaints of pain even though they may not be fully corroborated by objective examinations and tests. *Id.* at 166; *see also Lund v. Weinberger*, 520 F.2d 782 (8th Cir.1975) (subjective complaints of pain served as basis for disability where none of the medical evidence was inconsistent with those complaints).

■ Plaintiff's treating physician has diagnosed plaintiff to be suffering from lumbar disc syndrome. This diagnosis was supported by the consulting physician appointed by the Secretary. The plaintiff's symptoms—severe back pain, intermittent numbness and tingling of lower extremities and inability to stand or sit in one position for any length of time without severe pain—all support that diagnosis. Although some of the diagnostic procedures were less conclusive, they do not contradict plaintiff's diagnosis in any way; indeed, plaintiff's physican has made the diagnosis in light of the negative test results. Since the medical evidence is not inconsistent with plaintiff's complaints of pain, the complaints stand unrebutted unless there is other evidence in the record upon which the ALJ could base his decision.

The court finds no other evidence in the record which could support the ALJ's decision. Both the evidence of plaintiff's activities and that supplied by Dr. Steen, the vocational psychologist, lend support to the plaintiff's complaints of pain. Plaintiff has become severely restricted in his activities as a result of his back condition. As amply corroborated throughout the transcript, plaintiff suffers such intense pain that it is a constant factor in his decision to do the slightest of activities, including lifting up to 10 pounds. Plaintiff must lie down for

up to half of each day in an attempt to alleviate his condition. As a result of these factors, and after review of the medical evidence, Dr. Steen concluded that plaintiff could not realistically engage in sustained gainful employment.

All evidence presented corroborates plaintiff's complaints of pain. Because of the severity of plaintiff's pain, he is unable to realistically perform the duties of sustained gainful employment. The ALJ's decision in denying benefits is not supported by substantial evidence and must be reversed.

Accordingly, IT IS HEREBY ORDERED That plaintiff's motion for summary judgment is granted and the matter remanded for a determination of the amount of benefits accrued from the date of plaintiff's application.