**Jesse C. DAVIS, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.**

**No. 79–1199.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1979.

Decided Sept. 20, 1979.

---

Alex G. Streett and Dale E. McCoy, Russellville, Ark., on brief for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., W. H. Dillahunty, U. S. Atty., Don N. Curdie, Asst. U. S. Atty., Little Rock, Ark., and Alan M. Grochal, Atty., Dept. of H. E. W., Baltimore, Md., on brief for appellee.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

PER CURIAM.

Jesse C. Davis appeals from an order of the district court [1] affirming a final decision of the Secretary of Health, Education and Welfare denying Davis' application for social security disability insurance benefits. We conclude after review of the record that the decision of the Secretary is not supported by substantial evidence and, therefore, reverse with directions that this matter be remanded to the Secretary for further consideration in light of our opinion.

I.  FACTS & PROCEEDINGS BELOW

Davis applied to the Social Security Administration (SSA) for disability insurance benefits on July 2, 1973, stating that he had diabetes, an enlarged heart, hernia and gallstones, and that he had been unable to work because of these disabilities since September 10, 1972.  The application was denied both upon initial consideration and after reconsideration.  Davis requested and received a hearing before an Administrative Law Judge on February 12, 1975.  In a decision dated August 11, 1975, the ALJ determined Davis was not disabled within the meaning of the Social Security Act on the date he was last insured under the Act, December 13, 1973.  The decision was affirmed by the Appeals Council on February 9, 1976, and that affirmance operated as a final decision of the Secretary of HEW. *Roark v. Califano*, 564 F.2d 14, 15 (8th Cir. 1977).

---

1. The Honorable Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

On April 6, 1976, Davis filed this action pursuant to 42 U.S.C. § 405(g) for review of the Secretary's decision. On February 20, 1979, on cross motions for summary judgment, the district court affirmed the Secretary's determination and dismissed the complaint with prejudice. Davis timely filed notice of appeal on March 6, 1979.

## A. *Evidence of Disability*

Davis was born February 16, 1919, and has a fifth grade education. At the time he first applied for benefits in 1973, he was fifty-four years old and lived with his wife and four minor children, then ranging in age from six to thirteen. His primary employment has been as a migratory farm laborer, picking and boxing fruit. This job required him to lift fifty-pound sacks and boxes and carry them short distances. He worked for a brief period in 1969–70 as a maintenance man. From March 1970 to September 1972, he was employed at the Atkins, Arkansas city dump. His job was to watch the dump and to tell people where to dump their trash, for which he was paid $15.00 per week.[2] At some time he constructed a shack and helped his wife operate a small second-hand shop, selling junk he brought home from the dump. This activity was apparently negligible, earning them less than $400 in any year, and had ceased completely several months before the hearing.

On his applications for benefits and at the hearing before the ALJ, Davis stated that he suffered from diabetes, an enlarged heart, hernia, gallstones, hypertension, blackouts and dizzy spells, shortness of breath and smothering spells, chest pain, rapid heartbeats and skipping heartbeats, a nervous condition, allergy, headaches, and swelling feet. He brought to the hearing twelve different medications he was taking and testified he had been under the care of Dr. Buchanan since 1972. Davis stated he was forced to give up the job at the dump because the fumes from the burning made

him sick and because he was having blackout spells which he attributed to his diabetes. He also stated that when he tried to work he would vomit when he stooped over, that he was having shortness of breath and chest and heart pains, and that he just "wasn't able to do anything without giving out." He stated he did not drive because he feared he would faint. He stated he obtained a medical discharge from the Army in 1945 because of a "nervous heart" and that he had had "spells" of heart trouble about twenty years previously, ten years previously and around 1966. He stated he had not felt very well for about ten years.

Davis was the only witness at the hearing. There was no vocational evidence. Medical reports from four physicians were received in evidence. Dr. Franklin examined Davis on September 21, 1973, and had another physician administer and interpret an electrocardiograph. Dr. Franklin reported, *inter alia*, that Davis had a regular heartbeat without murmurs, full range of motion in all joints, a normal EKG, and no gross abnormality in pulmonary capacity. His diagnosis was possible seizure disorder versus psychoneuroses; diabetes mellitus by history; hypertension. He reported he could find no signs of diabetic retinopathy and could detect no anginal history. He stated he could find no organic reason for a lot of Davis' complaints and felt that most of his problem might simply be anxiety neuroses.

Dr. Buchanan first examined Davis in October 1972, and thereafter treated him on a regular basis. On July 24, 1973, in a telephone contact with the SSA, Dr. Buchanan reported that Davis had angina, chest pain, premature ventricular contractions with tachycardia, adult onset diabetes in good control and also emphysema and exogenous obesity.[3] He noted no signs of neuropathy or retinopathy. In a report dated August 27, 1974, Dr. Buchanan made the following diagnosis: hypertension—

---

2. Davis' earnings have been minimal throughout his employment history. His total earnings since 1945 have totalled $10,970.96.

3. Dr. Buchanan verified this report by signing it.

diastolic persistently 100 or higher; maturity onset diabetes; exogenous obesity—moderately severe; chronic anxiety and nervousness; angina pectoris clinically present; chronic complaints of weakness and fatigue; dependent edema with swelling of the ankles. In a report dated February 7, 1975, Dr. Buchanan diagnosed Davis as suffering from maturity onset diabetes; essential hypertension, poor control; exogenous obesity; generalized osteoarthritis, moderate to severe; and angina pectoris from arteriosclerotic heart disease. Dr. Buchanan reported that the osteoarthritis was most severe in the neck, shoulders, lumbar back region and hips, resulting in limited flexion and extension of the neck, decreased flexion of the hips, and decreased function of the upper extremities. In this report Dr. Buchanan expressed his opinion that Davis' disabilities were severe enough to prevent him from engaging in any gainful employment.

Dr. Pennington examined Davis in July and August of 1974. His diagnosis was hypertension; diabetes mellitus; moderate obesity; nervousness and anxiety; angina pectoris; edema of the lower extremities; fatigue and weakness.

Dr. Tolbert examined Davis on April 16, 1975, at the request of the ALJ after the hearing. His diagnosis was hypertension, controlled on medication; tachycardia with no evidence of other cardiac disease but a history of cardiac irregularity; cardiac neurosis, severe; diabetes mellitus, questionable control, no complications; exogenous obesity. Dr. Tolbert indicated that Davis probably had a chronic hyperventilation syndrome associated with his anxiety and that his tachycardia might also be caused by anxiety.

Also received in evidence was a report from the Millard-Henry Clinic including an electrocardiograph made in 1966 and a chart showing Davis' contacts with the clinic in 1966–67. The chart indicates Davis complained of chest pain and irregular heartbeat and obtained medication for these in 1966 and 1967.

## B. Decision of the ALJ

The ALJ concluded Davis was last insured for disability purposes on December 31, 1973. After summarizing the medical evidence, the ALJ concluded that Dr. Franklin's examination of September 1973 "best represents the true physical condition of the claimant as it existed at the time he was last insured for disability purposes." The ALJ analyzed Dr. Franklin's report as follows:

> The doctor made four pertinent findings. The hypertension and diabetes are controlled by medication. He made a finding of a possible seizure disorder versus a psychoneurosis. If a disorder of this type exists then it has existed for many years as evidenced by the fact that the claimant was discharged from military service because of a nervous heart. Since that time, he has engaged in many types of gainful activity and it, therefore, must be concluded that any seizure disorder has not been of sufficient magnitude to keep him from performing certain types of work. The fourth problem mentioned by the internal specialist was anxiety neurosis. There is no showing in the record that this "anxiety neurosis" is of such magnitude as to prevent the claimant from engaging in work activity. It appears this problem has not been of sufficient nature to cause the claimant to seek much medical attention and that the office record of the treating general practitioner is part of the record and shows four visits in 1966 and 1967. It is noted the physician states he has been seeing the claimant on an every two or three week basis since 1972. But, in any event, it appears at the time the claimant was last insured that work activity and medication would have been the best thing for the anxiety reaction.

The ALJ then concluded that Davis "was not disabled, as that term is defined in the Act on the date he was last insured."

## C. Decision of the District Court

The district court concluded that the agency decision was supported by substan-

tial evidence. The court specifically mentioned Davis' testimony that his chest pain could be readily alleviated by nitroglycerin, and the evidence that Davis had obtained medication for irregular heartbeat as early as 1966 yet had engaged in substantial gainful employment from 1969–72 subsequent to the onset of that impairment. The court observed that the ALJ erroneously stated that Dr. Franklin found that Davis' hypertension and diabetes were controlled by medication. However, the court pointed out that both Dr. Buchanan and Dr. Tolbert indicated that the diseases were controlled. Finally, the court noted that although all the examining doctors found Davis suffered from some type of anxiety neurosis, the ALJ "found that the problem was not severe enough to prevent plaintiff from engaging in his former occupation." The court observed that although the 1975 medical reports indicated Davis' neurosis was severe, there was no indication of the severity of the neurosis prior to the date Davis' insured status terminated in 1973. Accordingly, the court concluded that the determination of the ALJ was supported by substantial evidence on the record as a whole.

## II. ANALYSIS

Davis contends on appeal that the district court erred in holding that the agency decision was supported by substantial evidence.[4]

A claimant for disability insurance benefits has the burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). To satisfy the statute he must show he has a medically determinable physical or mental impairment that will last at least twelve months and that renders him unable to engage in substantial gainful activity. The claimant bears the initial burden of establishing that he is unable to perform his past occupation due to the medically determinable impairment. If he

succeeds in doing so, the burden shifts to the Secretary to show the claimant can perform some other type of substantial gainful employment. *Stephens v. Secretary of HEW*, 603 F.2d 36 (8th Cir. 1979); *Lewis v. Califano*, 574 F.2d 452 (8th Cir. 1978); *Johnson v. Califano*, 572 F.2d 186 (8th Cir. 1978).

Davis has not challenged the agency determination that he last met the special earnings requirements and was last insured on December 31, 1973. He, therefore, has the burden of proving he was entitled to benefits on or before that date. *Harapat v. Califano*, 598 F.2d 474 (8th Cir. 1979).

All the medical evidence indicates that Davis suffered from certain medically determinable impairments at the time he was last insured for benefits and that these impairments were of greater than twelve months duration. Since the Secretary did not offer any vocational evidence to show that, despite his impairments, Davis could perform some other types of work, the central issue in this case is whether Davis' impairments precluded him from performing his former jobs. *See Johnson v. Califano, supra*, 572 F.2d at 188. The ultimate question of whether a condition is so severe as to be disabling is for the Secretary, *Janka v. HEW*, 589 F.2d 365, 369 (8th Cir. 1978), and his determination as to any fact is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Lewis v. Califano, supra*, 574 F.2d at 455.

Unfortunately, the findings of the ALJ, which became those of the Secretary, were minimal[5] and do not address all the relevant medical evidence. Since Davis was required to prove his disability dated back to the time he was last insured, the ALJ properly emphasized the report of Dr. Franklin based on his examination of Davis

---

4. Davis also specifically alleges that the district court misrepresented the findings of the ALJ by erroneously stating, "The [ALJ] found that the problem was not severe enough to prevent plaintiff from engaging in his former occupation." Davis accurately points out that the

ALJ made this finding only in specific reference to his anxiety neurosis. However, the district court as well was referring only to anxiety neurosis and, therefore, did not misstate the ALJ's finding.

5. *See* excerpt from ALJ opinion, *supra*, p. 1070.

in September 1973.[6] However, the ALJ made no mention of the July 1973 report of Dr. Buchanan to the SSA. This report was more or less contemporaneous with that of Dr. Franklin, but indicated that Davis suffered from certain impairments not reported by Dr. Franklin, i. e., angina, chest pain, premature ventricular contractions with tachycardia, and emphysema. Although it is the responsibility of the ALJ to resolve conflicts in the evidence, *Janka v. HEW, supra*, 589 F.2d at 369, the fact that the ALJ made no mention of this report suggests that he may have overlooked it. Because it is one of only two medical reports focused on the relevant time period, and because Dr. Buchanan had been treating Davis over a period of time whereas Dr. Franklin examined him on only a single occasion,[7] the ALJ should have considered this evidence.

Reviewing Dr. Franklin's report only, the ALJ indicated that Dr. Franklin found Davis' hypertension and diabetes were controlled by medication. As pointed out by the district court, Dr. Franklin merely diagnosed Davis as having these diseases and did not indicate whether or not they were adequately controlled. However, Dr. Buchanan's 1973 report indicated the diabetes was well controlled. The later medical reports did not indicate otherwise.[8] There is conflicting evidence regarding control of the hypertension. Dr. Buchanan's 1974 and 1975 reports indicated it was poorly controlled while Dr. Tolbert's 1975 report indicated it was controlled. Neither of these reports goes to Davis' condition in 1973.

With respect to Dr. Franklin's diagnosis of "possible seizure disorder versus psychoneuroses," the ALJ concluded that if Davis had any such disability it had existed for many years, during which he had often been gainfully employed. The ALJ based this conclusion on Davis' testimony that he was discharged from the service due to a "nervous heart." Davis' testimony about the reason for his discharge was very vague and his single reference to a problem of a "nervous heart" hardly seems substantial evidence to support the ALJ's conclusion that any seizure disorder he may have had dated back many years. There was no other evidence to support such a conclusion. Furthermore, this court has previously observed that the fact a person has functioned in the past with certain impairments is not necessarily substantial evidence of present ability to work since "[a] condition which was tolerable at one time can deteriorate to the point that it becomes intolerable." *Johnson v. Califano, supra*, 572 F.2d at 188.

Finally, with respect to Dr. Franklin's comments about an anxiety neurosis,[9] the ALJ concluded there was "no showing in the record that this 'anxiety neurosis' is of such magnitude as to prevent the claimant from engaging in work activity." In support, the ALJ stated that the problem had not been severe enough to cause Davis to seek medical attention, but in the next sentence the ALJ acknowledged that the evidence was that Davis had been seeing his

---

**6.** *See Boyer v. Califano*, 598 F.2d 1117 (8th Cir. 1979), in which this court indicated that in reviewing a denial of disability insurance benefits, it would consider only the medical reports going to the claimant's medical condition prior to the date her insured status expired. However, subsequent medical reports may be relevant to the extent they reflect on the claimant's condition at the critical time. *See Davion v. Celebrezze*, 340 F.2d 606 (5th Cir. 1965) (1960–63 medical evidence was relevant to question whether employee's disability existed in 1957). In this case, only two of the medical reports, Dr. Franklin's and Dr. Buchanan's first report to the SSA, were compiled prior to the critical date of December 31, 1973.

**7.** *See Hancock v. Secretary of HEW*, 603 F.2d 739, 740 (8th Cir. 1979) ("[T]he report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician.")

**8.** Dr. Tolbert's report indicated questionable control of the diabetes, apparently only because he did not obtain a blood sugar test. However, he reported no significant complications from the diabetes.

**9.** Apparently the ALJ considered Dr. Franklin's *comments about an anxiety neurosis to refer to* something different from the possible psychoneurosis the doctor mentioned in his diagnosis.

treating physician every two or three weeks since 1972.[10] Moreover, Davis' neurosis was considered severe in Dr. Tolbert's 1975 medical report.

The ALJ's conclusion of no disability is not supported by substantial evidence on the whole record. First, as indicated earlier, the ALJ apparently completely overlooked the only report of Davis' treating physician which dates back to the critical period of time prior to December 31, 1973. Second, the ALJ explicitly found only that Davis' anxiety neurosis and "seizure disorder," if any, were not severe enough to preclude his return to his former occupation. The ALJ made no such finding based on a consideration of all of Davis' medically identified impairments.[11] "A claimant's illnesses must be considered in combination and must not be fragmentized in evaluating their effects. * * * The fact that each illness standing alone may not be disabling is not conclusive on the question of whether the individual is disabled." *Dressel v. Califano*, 558 F.2d 504, 508 (8th Cir. 1977). *Accord, Lewis v. Califano, supra.* Third, even with respect to Davis' anxiety neurosis or other nervous condition, this finding is questionable, as indicated above.

We reverse and remand to the district court with directions to remand to the Secretary. The Secretary should consider the case in light of all the relevant evidence and make more detailed findings. The Secretary should specifically determine whether, considering all the impairments Davis had during the relevant time period, he was precluded from returning to his former employment. The Secretary may wish to reopen the record for further medical evidence concerning Davis' condition during the relevant period. *See Boyer v. Califano*, 598 F.2d 1117 (8th Cir. 1979).

Reversed and remanded.

---

**10.** The ALJ then concluded, entirely gratuitously and with no basis in any of the medical records, that in any event "work activity and medication would have been the best thing for the anxiety reaction."

**11.** The Secretary contends that such a finding is implicit in the ALJ's ultimate conclusion of no disability. The problem with this argument is that the ALJ failed to consider all the relevant medical evidence.