**Henry J. SCHMIDT, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary, Health, Education and Welfare, Defendant.**

No. 79–0211–CV–W–5.

United States District Court, W. D. Missouri, W. D.

Sept. 16, 1980.

As Amended Oct. 23, 1980.

James M. Smith, Legal Aid, Kansas City, Mo., for plaintiff.

Paul Cacioppo, Regional Atty. Dept. of Health & Human Services, Washington, D. C., Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

Plaintiff brought this action under the provisions of 42 U.S.C. § 405(g), seeking judicial review of the defendant's final decision awarding him Social Security benefits from and after May 3, 1977, but denying him disability benefits prior to that date. Both the plaintiff and defendant have filed motions for summary judgment and have filed briefs in support of their respective motions. For the reasons stated hereafter, the defendant's motion for summary judgment is denied, and the plaintiff's motion for summary judgment is sustained, and the decision of the defendant to deny plaintiff Social Security disability benefits prior to May 3, 1977 is reversed.

Plaintiff filed an application for disability insurance benefits and Supplemental Security Income on August 10, 1976 and October 5, 1976, respectively, alleging the inability to work since February 27, 1972 because of mental problems and various physical conditions. Subsequently he changed his onset of disability to December 31, 1974 (Exhibit 16). The Administrative Law Judge (ALJ) held that the plaintiff was not eligible for Supplemental Security Income and was not entitled to disability insurance benefits under the applicable provisions of the Social

Security Act. The Appeals Council reversed the decision of the ALJ and held that the plaintiff was entitled to a period of disability commencing on May 3, 1977, and to disability insurance benefits under Section 216(i) and 223, respectively, of the Social Security Act, as amended. The Appeals Council further held that based on the application filed by claimant on August 20, 1976 the claimant has been disabled since May 3, 1977 under Section 1614(a)(3) of the Social Security Act. The Appeals Council further directed that the component of the Social Security Administration responsible for authorizing Supplemental Security Income payments would advise the claimant regarding the non–disability requirements and, if eligible, the amount and months for which payment will be made. The plaintiff agrees with the Appeals Council's decision that he has been disabled from and after May 3, 1977, but requests review as to whether or not the plaintiff was disabled from February, 1972, until May 3, 1977.

The form and scope of judicial review of the defendant's actions is statutorily defined and limited. Under 42 U.S.C. § 405(g), the Secretary's decision is conclusive upon the Court if it is supported by substantial evidence. *Alexander v. Weinberger*, 536 F.2d 779 (8th Cir. 1976); *Yawitz v. Weinberger*, 498 F.2d 956, 957 (8th Cir. 1974). This standard of substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Russell v. Secretary of HEW*, 540 F.2d 353, 356 (8th Cir. 1976); *Brinker v. Weinberger*, 522 F.2d 13, 17 (8th Cir. 1975).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). In order to meet the statutory definition, the claimant must show (1) that he has a medically determinable physical or mental impairment that will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is a result of his impairment. *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975).

1. Apparently the plaintiff's income from the junkyard operation was very limited.

Once the claimant establishes that his impairment is so severe that he cannot engage in his former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful employment. *Johnson v. Califano*, 572 F.2d 186, 187 (8th Cir. 1978).

The plaintiff was born on November 13, 1929. He went to the eighth grade in school but apparently took some educational courses while he was in the Army and came out with a third year high school equivalent. He was in the Army in 1951 through 1953 and then he re–enlisted in February, 1955 and was discharged in January, 1965. While he was in the Army he had eight years as a medic and the rest of the time he was a truck driver. The plaintiff married while he was in the Army stationed in Germany and he has six children by this marriage, ranging in age from 2 years old to 20 years of age. Since plaintiff's discharge from the Army he has been self–employed operating an automobile and truck junkyard.[1] In addition, he has been employed from time to time at various jobs but always was fired or dismissed because he became angry with his employer or his fellow workers. The last time that the plaintiff worked was in 1974 and, according to the plaintiff, he became totally disabled on December 31, 1974, and has not worked since that date.

Although the plaintiff has some minor physical disabilities, including a double hernia, his contention is that he is unable to work because of his inability to control his temper. All of the doctors who have examined him found that he has a passive–aggressive personality and that his behaviour borders on the paranoid schizophrenic–type reaction.

The plaintiff claims to have been seen by a psychiatrist while he was in the Army but there is no evidence in this record as to what, if any, evaluation they made of the plaintiff.

Between 1973 and 1978 the plaintiff was seen by the following psychiatrists: Paul L. Barone, David P. Behend, Carleton Lindgreen, and Dr. William McKnelly, Jr. Dr. Barone first saw the plaintiff as an out–patient at the Nevada State Mental Hospital on April 11, 1973. Dr. Barone found that plaintiff had an IQ score of 88, which borders on low–normal level. He also found that he shows much anxiety which is definitely a neurosis of the anxiety–type. He further found that his thinking and behaviour borders on the paranoid schizophrenic–type reaction, evidently because of his paranoid behaviour and aggressiveness. He found that his mental condition was such that he was unable to hold down a job even of the minimal type. Dr. Barone again saw the plaintiff in the out–patient clinic on November 27, 1973. Dr. Barone stated that he could not see much difference in Mr. Schmidt's mental condition as compared to when he saw him in April of 1973, and that he was still of the opinion that Mr. Schmidt could not hold down a job. Dr. Barone again saw the plaintiff in March of 1974, September 9, 1976, December 3, 1976. On all those occasions Dr. Barone continued to find that the claimant was emotionally disabled and that even if he were able to obtain a job he would not be able to keep it because of his paranoid tendencies and his emotional instability.

The last time that Dr. Barone saw plaintiff was on August 16, 1977. Dr. Barone pointed out that he had seen this subject in the out–patient clinic in March, 1973, November, 1973, September, 1976, and December, 1976. He said that he found that each time he had examined the plaintiff he felt that he was psychiatrically ill and that his condition had shown no remarkable change for the better. Dr. Barone stated that he felt that the plaintiff was disabled when he

first saw him and that this disability still exists.

In June of 1974 plaintiff was examined by Dr. David P. Behend, who was a psychiatrist practicing in Joplin, Missouri. Dr. Behend's diagnosis of the plaintiff was parallel to the diagnosis made by Dr. Barone. Dr. Behend found that the claimant was passive–aggressive personality. He also found that he had a dull–normal intelligence. It was Dr. Behend's opinion that because of the passive–aggressive personality of the plaintiff it made him uncooperative and unreliable in dealing with other people. He stated that this would make it difficult for him to work effectively.[2]

In January of 1978, the plaintiff was admitted to the Veterans Hospital in Kansas City, Missouri, for psychiatric evaluation and treatment. He was seen by Dr. William D. McKnelly, Jr., Associate Professor of Psychiatry at the University of Kansas Medical Center, Department of Psychiatry. Dr. McKnelly saw the plaintiff while he was in the VA Hospital in January through March of 1978 and continued to follow him after he was released from the hospital. Dr. McKnelly found that the plaintiff, while on his in–patient stay in the VA Hospital in January through March of 1978, revealed a chronic paranoid delusional system and included overt acts toward his former doctors in the mental hygiene clinic. He found that he remained essentially the same since his discharge, being treated with various anti–psychotics (Mellaril and Haldol) with only minimal success. He further found that the plaintiff required enormous pressure, confrontations and overt threats on the doctor's part to get him to take his medication. He further found that the plaintiff's paranoid orientation was so pervasive and so hostile that he seriously doubted if anyone would ever be able to employ him and that he had great capacity to be dangerous to

---

**2.** Dr. Behend then made a statement in his report that obviously is not a medical opinion, but a social opinion. He stated that if you put a patient like this on welfare that he would remain on welfare indefinitely and that if he was forced to work he indeed could find work. Dr. Behend then opined that he thought it would be unwise to grant him disability benefits at this time. Obviously, Dr. Behend's so-

cial opinion is contrary to his medical opinion and we believe that, from a fair reading of Dr. Behend's report, because of the plaintiff's mental condition he would have a great deal of difficulty in holding a job. We discount Dr. Behend's social opinion because there is no showing that he has any expertise as a social evaluator.

others. Dr. McKnelly then stated that he was reasonably certain that this condition that he found in the plaintiff was a *long-standing condition* and the treatment outlook was extremely poor. On the second page of Dr. McKnelly's report he made the following statement with regard to the plaintiff:

"In summary he is either a chronic, unremitting paranoid schizophrenic or a simple schizophrenic with the persistent paranoid system of thinking. In my opinion, either would render this patient unable to work in our society.

"It is a reasonable medical probability that he has been this way for a considerable period of time and will always be this way, if not worse."

The only doctor that found the plaintiff was able to work was Dr. Carleton G. Lindgreen, a psychiatrist practicing in Kansas City, Missouri. He saw the plaintiff one time on December 27, 1976, at the request of the Social Security Administration for a psychiatric examination. Dr. Lindgreen made the same diagnosis that plaintiff was a paranoid schizophrenia but that this condition was in remission and that he had a passive–aggressive personality. Dr. Lindgreen then gave his opinion that the plaintiff's mental impairment was not so severe as to render him unable to engage in any substantial gainful activity.

Although the plaintiff's mental problems predated December, 1974, we find that the plaintiff is unable to claim any benefits prior to December 31, 1974, because by the claimant's own statement which he rendered to the Social Security Administration he stated that he had become disabled on December 31, 1974 and that he had not worked since that date. The Appeals Council found that the plaintiff was clearly disabled at the time of the hearing but felt that the record was not persuasive that the claimant's emotional condition resulted in such a loss of function to preclude work activity prior to May of 1977. This finding by the Appeals Council is contrary to the record. All of the psychiatric evaluations that were performed on this plaintiff from 1973 and thereafter indicated that the plaintiff was suffering from severe emo-

tional problems. All of the doctors felt that because of the severe emotional problems of the plaintiff he was unable to obtain employment because his emotional instability prevented him from being able to get along with his employer and his fellow workers. The only examining psychiatrist that felt that plaintiff could be gainfully employed was Dr. Lindgreen. Dr. Lindgreen only saw the patient on one occasion, in January of 1977, and that was for the purpose of examining the plaintiff for the Social Security Administration. This is not substantial evidence based upon the record as a whole to deny disability benefits to the plaintiff from and after December 31, 1974 to May 3, 1977. *Hancock v. Secretary, Dept. of Health, Education & Welfare*, 8th Cir., 603 F.2d 739; *Davis v. Califano*, 8th Cir., 605 F.2d 1067; *Ragsdale v. Secretary, Dept. of Health, Education & Welfare*, 8th Cir., 623 F.2d 528 (1980).

For the reasons stated above, it is hereby

ORDERED that the motion of plaintiff is granted and that the plaintiff was permanently and totally disabled from December 31, 1974 to May 3, 1977, and was unable to perform substantial gainful employment during that time and is entitled to benefits under the Social Security Act, based on an onset of disability of December 31, 1974.