**George O. JOHNSON, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

Civ. No. 4–81–678.

United States District Court,
D. Minnesota,
Fourth Division.

May 24, 1983.

Gregory J. Pulles, Mackall, Crounse & Moore, Minneapolis, Minn., for plaintiff.

James M. Rosenbaum, U.S. Atty. by Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## ORDER

MILES W. LORD, Chief Judge.

The plaintiff, George O. Johnson, seeks judicial review of a decision of the Secretary of Health and Human Services (Secretary) denying him disability insurance benefits pursuant to 42 U.S.C. §§ 416(i) and 423. Both parties have moved for summary judgment.

Plaintiff first applied for disability benefits on August 15, 1978. Benefits were denied by the Secretary both initially and upon reconsideration. Plaintiff applied for disability benefits a second time on November 9, 1979. On January 11, 1980, plaintiff was notified that he was entitled to receive benefits for the period beginning July 17, 1979. He then requested reconsideration of this decision, alleging that his disability began on November 5, 1977. After plaintiff's claim was denied on reconsideration, a hearing was held before an Administrative Law Judge (ALJ). On June 29, 1981, the ALJ issued a decision concluding that plaintiff was not disabled prior to July 17, 1979. This decision became the final decision of the Secretary when affirmed by the Appeals Council on August 14, 1981.

This court has jurisdiction to review a final decision of the Secretary under 42 U.S.C. § 405(g). The Secretary's decision denying benefits is conclusive if supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. *Garrett v. Richardson,* 471 F.2d 598 (8th Cir.1972). Application of this test requires this court to view the substantiality of the evidence in the record as a whole, taking into account whatever in the record fairly detracts from the weight of the evidence. *Brand v. Secretary of Dept. of Health, etc.,* 623 F.2d 523,

527 (8th Cir.1980), citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 484–85, 71 S.Ct. 456, 462–63, 95 L.Ed. 456 (1951).

The issue presented here is whether the plaintiff is entitled to disability benefits for the period between November 5, 1977, and July 17, 1979. For the following reasons, this court finds that plaintiff is entitled to disability benefits for the period in question.

The plaintiff is a 56-year-old man with a long history of alcohol addiction. He was employed by Addressograph Multigraph of Minneapolis from November of 1947 until November 2, 1977. During the last 28 years of his employment, he worked as a sales representative. This position continually involved opportunities for alcohol consumption. These occasions included frequent three to four hour, multi-martini lunches, afternoon golf with cocktails (before, during and after), sales parties, social events with clients and Saturday sales meetings ordinarily held at the Black Angus bar. In the early 1970's, the plaintiff began to drink in the mornings and continued to drink upon returning home at night. His heavy alcohol consumption began around 1955 and continued in ever-increasing quantity through 1980. Throughout this period, plaintiff's daily alcoholic intake was a pint to a quart of vodka a day.

In 1975, the sales manager began to reduce the plaintiff's sales territory. First his territory was reduced from the entire state of Minnesota to exclusively Minneapolis. Then a number of his large accounts were cut, including Control Data Corporation, IBM, the U.S. Government and commercial banks. As plaintiff's drinking increased, he was frequently absent from work with a myriad of physical complaints including hypertension, digestive upset, nausea, repeated influenza, skin rash, memory loss, blackouts, tremors in the hands, rapid weight loss, wheezing, coughing, insomnia, frequent and severe bloody noses, severe diarrhea, change in complexion, anxiety and depression.

Upon the recommendation of his employer, and with the approval of his physician, Dr. Blake, the plaintiff took two consecutive 30-day medical leaves of absence from work. However, plaintiff's condition did not improve and on November 3, 1977, upon the advice of Dr. Blake, plaintiff left his employment. Since leaving his employment, plaintiff has not engaged in any gainful activity. His daily activities consist of doing light yard and garden work, engaging in social activities and visiting with friends. He is able to do some light housekeeping chores. Plaintiff uses numerous prescription and nonprescription drugs.

There is ample medical evidence in support of plaintiff's claims. Plaintiff was first diagnosed by Dr. Blake to have liver disease in 1977. On February 17, 1977, Dr. Blake noted that plaintiff's liver was enlarged with "extension below the rib margin to about 5 fingers." (T. 259).[1] Subsequently, on October 17, 1979, Dr. James Reynolds diagnosed the plaintiff to be suffering from "severe intractable liver disease, namely cirrhosis." (T. 242). Dr. Reynolds continued:

> It is my further opinion that this condition is now in a so-called end stage and prevents Mr. Johnson from engaging in full-time occupational activity. Furthermore, further insults to his general overall physical health carry the risk of having a fatal outcome.

(T. 242–243).

Dr. John Middlebrook testified at the hearing before the ALJ that the extent of plaintiff's condition in July of 1979 indicates that the plaintiff's cirrhosis was in existence by at least 1977 (T. 101). Upon plaintiff's discharge in August of 1980 from St. Mary's Hospital for treatment of alcoholism, Dr. Middlebrook stated that "[t]he patient has been a heavy drinker for many, many years, at least thirty." (T. 264).

The plaintiff was first seen by Dr. Blake on February 17, 1977. Dr. Blake diagnosed the plaintiff to be suffering from gastroenteritis, flu-type syndrome with upper respiratory infection. It was during this exami-

---

1. All citations to "T." refer to pages of the administrative transcript.

nation that Dr. Blake found the plaintiff's liver to be enlarged. The plaintiff was also suffering from hypertension and was given medication for high blood pressure. During a November 2, 1977, examination by Dr. Blake, it was noted that plaintiff was apprehensive and his hands were shaking. It was at this time that Dr. Blake advised the plaintiff to "stay off work for a period of time." (T. 259).

Concerning plaintiff's condition prior to 1979, Dr. Reynolds prepared the following opinion, set forth in a report dated March 24, 1980:

I did not have any direct contact with Mr. Johnson prior to July 1979 and therefore have no first hand evidence of his health preceding that date. It is my opinion, however, that Mr. Johnson probably had cirrhosis for a number of years for the following reasons: 1) he has been observed and told by a previous physician (Dr. Allan Blake) as well as his wife that his alcohol intake was excessive and this extends to prior years. 2) Dr. Blake did find and describe a "swollen liver" in his notes in February 1977. 3) The presence of varices, the low albumin, the elevated prothrombin time, the hepatic encephalopathy, and the low cholesterol are signs of chronic liver disease. It is generally conceded that late stage liver disease due to alcohol excess generally takes 5–10 years to develop. Although there is no documentation of previous liver function values, this would be a reasonable assumption.

In summary, I am of the opinion that Mr. Johnson has probably had cirrhosis for a number of years and we are now seeing the late stage complication of this disease.

(T. 258).

■ It is not disputed that plaintiff met all the earnings requirements necessary to be eligible for benefits between November of 1977 and July of 1979. The only question before the ALJ was whether the plaintiff met the requirements for establishing disability during that period. See 42 U.S.C. §§ 416(i) and 423. To meet the statutory requirements for disability insurance benefits, the plaintiff must show that: 1) he has a medically determinable physical or mental impairment which has or can be expected to last for a continuous period of at least 12 months, 2) he cannot engage in substantial gainful activity and 3) the inability is by reason of the impairment. *Yawitz v. Weinberger,* 498 F.2d 956 (8th Cir.1974); *Lewis v. Califano,* 574 F.2d 452, 455 n. 1 (8th Cir.1978). The initial burden of proof is upon the plaintiff to show that he cannot return to his former job. *Davis v. Califano,* 605 F.2d 1067, 1071 (8th Cir.1979). Once the plaintiff has met that burden, the Secretary must establish by a preponderance of the evidence that the plaintiff can perform no other substantial gainful activity. *Stone v. Harris,* 657 F.2d 210, 211 (8th Cir.1981); *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982).

It is unclear from the record whether the ALJ shifted the burden of persuasion to the Secretary to show there is other substantial gainful activity that plaintiff can perform. The ALJ made no specific finding in regard to whether the plaintiff could or could not return to his former employment. Rather, the ALJ found that plaintiff had not provided evidence showing that he could not engage in "*any* substantial gainful activity." (T. 15) (emphasis added). This is clearly not the proper burden of proof. Although failure to shift the burden of proof would normally require this court to remand the matter to the Secretary for further proceedings, such a result, for the reasons set forth below, is not required here.

■ The medical evidence in favor of plaintiff's claim is overwhelming and uncontradicted. Dr. Blake began treating the plaintiff in February of 1977, at which time it was noted that plaintiff's liver was enlarged. During a November of 1977 examination, Dr. Blake noted that plaintiff's hands were shaking. Dr. Blake then advised the plaintiff to discontinue work, at least for a period of time. Plaintiff's drinking problem continued and he was not able to return to work. In July of 1979, Dr. Reynolds diagnosed the plaintiff to be suf-

fering from severe intractable liver disease, namely cirrhosis. Dr. Reynolds noted that plaintiff's disease was in its latter stages and that further injuries to plaintiff's health could prove to be fatal. In a report dated March 24, 1980, Dr. Reynolds stated that the plaintiff had probably had cirrhosis for a number of years. Dr. John Middlebrook confirmed the fact that plaintiff had been a heavy drinker for more than thirty years. Dr. Middlebrook concluded that because of the extent of the disease in 1979, plaintiff suffered from cirrhosis of the liver since at least 1977.

In his decision, the ALJ relied at least in part upon the opinion of Dr. Joseph B. Steen, a rehabilitation psychologist. Dr. Steen examined the plaintiff in August of 1978. In a report dated October 23, 1978, Dr. Steen concluded that, "Mr. Johnson is not disabled in any normal means although undoubtably [sic] he has some anxiety arising out of the blow to his self esteem." (T. 175). It is clear that Dr. Steen was not aware of the plaintiff's alcoholism and physical condition as of the time he drew this conclusion. In a letter addressed to plaintiff's counsel and submitted to the Appeals Council, Dr. Steen stated specifically, as follows:

> If I had that information [concerning plaintiff's alcoholism] I would certainly have a different opinion concerning his disability. As stated in my letter of October 23, 1978, with severe alcoholism sufficient to cause the kind of problems described in the medical reports, he would in my opinion, be vocationally disabled and unable to perform sustained competitive employment.

(Plaintiff's brief, attached Exhibit B.)

Although the latter statement by Dr. Steen is not part of the record submitted by the Secretary, the Secretary does not contest that the letter was considered by the Appeals Council. This letter clearly indicates that if Dr. Steen had been aware of the extent of plaintiff's problem as of the date he rendered his initial conclusion, he would have found the plaintiff to be disabled.

All other evidence in the record is consistent with the medical evidence in regard to the plaintiff's condition as of November 1977. Plaintiff's daily activities were severely restricted and he suffered from numerous physical and emotional impairments. Indeed, plaintiff had become unable to function in his work environment, causing his employer to limit the plaintiff's responsibilities to a fraction of what they once were. After examining the plaintiff on November 14, 1977, Dr. Blake advised the plaintiff to stay off work. The record is clear that plaintiff had lost his ability to control the use of alcohol as of that date. All these factors, in addition to the medical evidence, show that plaintiff was unable to engage in substantial gainful activity as of November of 1977.

■ This court is not faced with a case in which the claimant is asking for benefits on the basis of his alcohol addiction alone. Plaintiff's addiction has developed into a most serious physical condition, causing him to be hospitalized in July of 1979 in a near-death situation. The medical evidence overwhelmingly establishes that the plaintiff's physical and emotional impairments were existing and disabling as of November of 1977. While significant organ damage caused by excessive drinking is not necessary to establish disability, see *Adams v. Weinberger,* 548 F.2d 239 (8th Cir.1977), such evidence is certainly entitled to great weight in determining whether plaintiff was disabled in November of 1977 as a result of his alcohol addiction.

■ A distinction can readily be made between the facts presented here and the case in which an individual, being a chronic alcoholic, requests benefits yet refuses to accept treatment. In the latter case, this court would give serious serious consideration to ordering that the individual seek treatment as a condition to his receiving disability benefits. While disability benefits are available to those individuals who have become physically unable to work because of their alcohol addiction, continuing benefits should not act as an incentive to refuse treatment. In the case of any other

physical ailment, which this court has determined alcoholism to be, *Granville House v. Dept. of Health & Human Services,* 550 F.Supp. 628 (D.Minn.1982), there is little chance that one refusing treatment could prevail where evidence indicates that the condition can be treated in most of its manifestations.

For the foregoing reasons, IT IS HEREBY ORDERED That the plaintiff's motion for summary judgment is granted and the matter remanded to the Secretary for the purpose of granting disability benefits for the period between November 5, 1977, and July 17, 1979.