Wilmer G. KILPATRICK, Plaintiff,

v.

Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.

Civ. No. 82–0178–CV–W–3.

United States District Court,
W.D. Missouri, W.D.

Oct. 3, 1986.

C. David Whipple, Kansas City, Mo., for plaintiff.

Frederick O. Griffin, Asst. U.S. Atty., Kansas City, Mo., for defendant.

**ORDER**

ELMO B. HUNTER, Senior District Judge.

Plaintiff, Wilmer Kilpatrick, filed an application for disability benefits with the

Social Security Administration (SSA) in December, 1979. The plaintiff's application was denied in January, 1982, because the Secretary was of the opinion that he was capable of returning to his former occupation. On September 23, 1983, this Court found that the Secretary's decision was not supported by substantial evidence and remanded the case to the Secretary "for a hearing solely on the question of whether Mr. Kilpatrick is capable of being gainfully employed despite his impairment." [1] Since that time, there have been three hearings set before an Administrative Law Judge (ALJ), two appeals to the Appeals Council, and two remands back to an ALJ. Following the latest remand by the Appeals Council to an ALJ, the Plaintiff filed the motion that is now before the Court. [2]

The crux of the Plaintiff's complaint is that it has been almost seven years since he first filed his application and over three years since this Court remanded the case for further proceedings, and the Secretary is still not prepared to make a decision in his case. In his somewhat confusing request for relief, the Plaintiff is basically asking the Court to either: (1) restrain any future administrative proceedings in his case and issue an order finding him disabled under the Social Security Act as of November 16, 1979; or (2) issue a writ of mandamus ordering the Secretary to issue his "final decision" in the case without further hearings before an ALJ.

When the Court earlier remanded this case, it asked the Secretary to determine whether significant jobs exist in the national economy that the Plaintiff could perform despite his impairments. Because the Secretary has not yet made such a determination, it would be inappropriate for the Court to issue an order finding the Plaintiff disabled. The Court can, however, under certain circumstances issue a writ of mandamus compelling the Secretary to make his final decision without further administrative delays. *See Queenan v. Heckler,* 581 F.Supp. 1216 (S.D.N.Y.1984); *Pierce v. Heckler,* 620 F.Supp. 320 (D.Ariz.1985).

District Courts have the power to issue writs of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." 28 U.S.C. § 1361. "It has long been held that mandamus is the appropriate remedy where Federal officials are acting outside the zone of their permissive discretion and contrary to law." *Miller v. Ackerman,* 488 F.2d 920, 921 (8th Cir.1973). A Court cannot use mandamus to *influence* an agency's discretion, but it may be used to compel the *exercise* of discretion. *Rural Electrification Administration v. Northern States Power Co.,* 373 F.2d 686 (8th Cir.1967).

The Secretary has promulgated regulations outlining the procedures to be followed in adjudicating Social Security disability claims at the agency level. When a case is remanded by a District Court for further consideration, the Appeals Council may remand the case to an ALJ for a recommended decision, 20 C.F.R. § 404.983 (1986). After receiving the ALJ's recommendation, the Appeals Council is to "conduct ... proceedings and issue its decision," which becomes the final decision of the Secretary. 20 C.F.R. § 404.977(e)(1) (1986). The regulations further provide that if the Appeals Council feels that more evidence is needed, it can remand the case to an ALJ for further proceedings. 20 C.F.R. § 404.977(e)(2) (1986).

---

1. The Plaintiff has the initial burden of proof in a Social Security disability action. He must show that his disability arose while he was insured by the Act, that he is not currently gainfully employed, and that the disability prevents him from returning to his past employment. Once this is shown, the burden then shifts to the Secretary to show by substantial evidence that significant jobs exist in the national economy that the Plaintiff can perform. *Davis v. Califano,* 605 F.2d 1067 (8th Cir.1979).

This case was remanded by the Court to the Secretary because the burden never shifted in the first ALJ hearing.

2. Two other motions are also pending before the Court, the Plaintiff's "Motion to Transfer File of Plaintiff ..." and the Defendant's "Motion for an Order". Both motions are made moot by this order.

But the Appeals Council does not have unlimited discretion to remand a case. *Queenan*, 581 F.Supp. at 1218; *Pierce*, 620 F.Supp. at 322. The Secretary has a duty under 42 U.S.C. § 405(b) to provide disability claimants with a final decision within a reasonable time. *See, e.g., White v. Mathews*, 559 F.2d 852, 858 (2d Cir.1977). This same duty applies to cases remanded to the Secretary by a District Court. When the Appeals Council uses its remand power so as to deny a claimant a decision within a reasonable time, the Secretary has breached his duty and mandamus is appropriate. Whether the Secretary has breached this duty in a given case naturally depends on the facts of that case, including what action the District Court requested be done upon remand to the Secretary, the thoroughness of the prior ALJ hearing, the Appeals Council's reason for re-remanding and the amount of time the case has been at the agency level. Thus, a review of Mr. Kilpatrick's case since it was remanded to the agency by this Court is in order.

On December 20, 1983, the Appeals Council vacated its earlier denial of the Plaintiff's request for review and remanded the case to an ALJ. A hearing was then set for March 7, 1984. When the Plaintiff's attorney received notice of the hearing, he attempted to contact the Plaintiff but was unable to do so.[3] As was subsequently discovered, the Plaintiff was residing in Boise, Idaho, and had been found by the Secretary to be legally blind, and thus, disabled under the Social Security Act as of 3/1/83.[4] The attorney informed both the SSA and the ALJ that he was unable to locate the Plaintiff and asked the Veterans Administration[5] and the SSA for assistance in locating him. After it became apparent to the attorney that neither he, nor the SSA or VA were going to locate the Plaintiff before the hearing date, he asked the ALJ for a continuance. However, the ALJ denied the application for continuance and, on March 29, 1984, issued a recommended order of dismissal.

The Plaintiff's attorney then filed a statement with the Appeals Council explaining his attempts to locate the Plaintiff before the hearing date and informing the Council that the Plaintiff had subsequently been found residing in Boise, Idaho, and had been receiving checks from the SSA since August, 1983. On February 2, 1985, the Appeals Council issued an order which refused to adopt the ALJ's recommended decision and remanded the case for a hearing. The Appeals Council noted that the Plaintiff's whereabouts were "in the possession of the Social Security Administration both at the time when the attorney asked for assistance in locating [him] ... and at the time of the scheduled hearing." It further noted that it would have been reasonable for the Plaintiff to assume that the SSA knew where to send his hearing notices because the agency had been sending him monthly disability checks at that time.

A second ALJ hearing was set for June 27, 1985, in Boise, Idaho. The Plaintiff's attorney, who practices law in Kansas City, Missouri, but who was vacationing in the area, made a special trip to Boise for the hearing. Unfortunately, the Secretary failed to make arrangements for a Vocational Expert to be present at the hearing. Because the Court's order specified that a Vocational Expert's testimony would be necessary, the ALJ closed the hearing without taking any evidence.

---

3. The SSA was also unable to notify the Plaintiff of the hearing. The notices that were sent to the Plaintiff's prior address were apparently returned to the SSA by the Post Office and then forwarded to the Plaintiff's attorney.

4. The Plaintiff began receiving monthly disability checks from the Secretary in August, 1983. Because he was declared disabled as of March, 1983, the subsequent proceedings in this case only concern the period between July, 1978 and March, 1983.

5. Mr. Kilpatrick served in both the Navy and the Air Force and had been receiving treatment for his ailments from the Veterans Administration.

A hearing was finally held on August 21, 1985, in Boise, Idaho.[6] At the hearing, the Plaintiff testified about his impairments during the relevant time period. In addition, the ALJ questioned and received testimony from a Vocational Expert. The Vocational Expert reviewed all of the medical evidence in the Plaintiff's file before the hearing and was able to question the Plaintiff at the hearing. He was of the opinion that the Plaintiff was not capable of substantial gainful employment between April, 1978, and February, 1983.

On October 22, 1985, the ALJ issued his recommended decision. He stated that: "This record is so well documented with uncontroverted independant objective medical evidence establishing the existence of multiple severe impairments, that it is hard to understand how this matter has proceeded for such a long period of time without the proper allowance of benefits being accorded." He found that the Plaintiff was suffering from the following impairments: mild cerrebellar deterioration; arthritis of the back; lumbar radiculopathy; history of chronic alcohol abuse; dizziness; and impaired vision. Given these, the ALJ was of the opinion that there were not significant jobs in the national economy that the Plaintiff could perform. Thus, he recommended that the Plaintiff be found disabled as of November 16, 1979.

On April 2, 1986, the Appeals Council refused to either adopt or reject the ALJ's decision and it again ordered that the case be remanded to an ALJ. The Council stated that it found *"no evidentiary* basis for finding that [Plaintiff] was limited to sedentary work or was disabled as of November 16, 1979." (emphasis added). The Appeals Council only gave two other reasons for remanding the case. First, it ordered that the ALJ ask the Vocational Expert "hypotheticals which delineated the [Plaintiff's] limitations."[7] Second, it took offense to the date chosen by the ALJ as the date the Plaintiff first became disabled, although it incorrectly stated that he found this date to be July, 1978.[8]

■ By again remanding this case to an ALJ, it seems clear to the Court that the Appeals Council breached its duty to give the Plaintiff a decision within a reasonable time. First, it is important to note that every delay in this case has been caused by the actions or inactions of the SSA. The March, 1984, hearing was not held because the Plaintiff did not receive notice of it and thus, did not know to attend. Prior to the hearing, the SSA knew where the Plaintiff was and had been sending him checks for over 7 months.[9] Likewise, the June, 1985, hearing was cancelled because the Secretary failed to have a Vocational Expert present, as ordered by this Court.

Second, the decision of the ALJ appears to be supported by very substantial evi-

---

**6.** The Plaintiff was represented at the hearing by an Idaho attorney.

**7.** It is unclear why the Appeals Council feels that hypotheticals are so important in a case like this, where the Vocational Expert was obviously very familiar with the Plaintiff's ailments. Moreover, the Vocational Expert may have indeed been asked such hypotheticals. The machine used to record the hearing malfunctioned and several segments of the hearing, including a substantial portion of the Expert's testimony, were not included in the transcript. Plaintiff should not be penalized or further delayed because of this, especially since the Vocational Expert was well informed on the plaintiff's problems and his opinion regarding disability is so clear.

**8.** The ALJ found the Plaintiff to be disabled as of November 16, 1979, not July, 1978. The Appeals Council is apparently of the opinion that this date is also incorrect. The problem

seems to center around the Plaintiff's activity at a half-way house from March, 1982, to March, 1983. The Plaintiff stated at the hearing that he had worked as "Manager" of the house. When questioned further, he stated that he "more or less just stayed there [and] kind of just looked after the place." The Plaintiff was not paid for this and while he was given room and board, he was required to apply for food stamps and give them to the owner of the half-way house. As with the Vocational Expert's testimony, two portions of the plaintiff's testimony regarding the half-way house were not included in the transcript because of the recorder's malfunctioning. Again, the Plaintiff should not be penalized or further delayed because of this.

**9.** The Court is in no way intimating that the SSA intentionally withheld the notice from the Plaintiff.

dence and the Appeals Council offers no justifiable reason why the case should be further delayed. The value of asking the Vocational Expert hypothetical questions in this case is questionable at best. The Vocational Expert who testified at the hearing questioned the Plaintiff at trial and reviewed his entire medical file. It is obvious from the transcript of the hearing that his decision would not change if he was asked further hypothetical questions. In addition, there is no reason why the Appeals Council cannot make a decision as to the date the Plaintiff first became disabled, if, in fact, it finds him to have been disabled prior to March, 1983. As noted previously, the ALJ found the Plaintiff disabled as of November 11, 1979, not July, 1978. The only possible problem the Appeals Council could have with that date is the plaintiff's activities at the half-way house from March, 1982, to March, 1983; and, there is ample evidence in the record regarding that activity for the Council to make a decision.

In essence, the Appeals Council is simply asking the ALJ, or possibly another ALJ, to review the same evidence again.[10] The Appeals Council cannot keep remanding a case to an ALJ until it receives a decision that it agrees with. If it disagrees with the ALJ's decision and, as in this case, there is sufficient evidence on the record for the Council to make a decision, it should reject the recommended decision, not remand the case for reconsideration. Given the previous delays already experienced in this case, the Court finds this to be an abuse of its remand discretion which breaches the Secretary's duty to render a decision within a reasonable time. Therefore,

IT IS ORDERED that the Appeals Council's re-remand order in this case be vacated.

---

10. In fact, the Appeals Council's order states: "The Administrative Law Judge shall *reevaluate* the evidence of record and shall make findings of fact as to the limitations imposed by the claimants nonexertional impairness." (emphasis added)

11. In *Heckler v. Day*, 467 U.S. 104, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1985), the Supreme Court

IT IS FURTHER ORDERED that this case be returned to the Appeals Council with instructions to either adopt, modify, or reject the ALJ's decision within 60 days.[11]

held that District Courts could not place mandatory deadlines on the SSA which apply in all cases. However, the Court made it clear that the opinion did not "preclude the proper use of injunctive relief to remedy *individual* violations of § 405(b)." *Id.* at 119 n. 33, 104 S.Ct. at 2258 n. 33, 81 L.Ed.2d 101, n. 33.