Lindsey **CLEAVER**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. LR–C–87–403.

United States District Court,
E.D. Arkansas,
Batesville Division.

Feb. 29, 1988.

Frederick S. "Rick" Spencer, Mountain Home, Ark., for plaintiff.

Charles Banks, U.S. Atty., Little Rock, Ark., for defendant.

## ORDER

ROY, District Judge.

Plaintiff, a sixty-six-year-old male, with a good work history, seeks social security disability benefits, relying primarily upon impairments relating to an injured hip. Notwithstanding this fact, the Secretary denied his claim for a period of disability and for disability insurance benefits.

Plaintiff's application was filed on January 22, 1986, alleging an onset date of April 29, 1985. His record reflected that due to his age, he had filed for retirement insurance benefits. The issue involved herein is whether he is entitled to the benefits by which he had filed for his disability application from April 29, 1985 until his 65th birthday, on November 18, 1986.

The question before the Court in this review is whether there is substantial evidence on the record as a whole to sustain the Secretary's denial of benefits. 42 U.S.C. § 405(g); *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir.1984). The review process is more than a search for the existence of substantial evidence supporting the Secretary's decision, *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir.1983), and requires the Court to "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *See also, Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987).

The claimant had a past relevant work experience as a pipe fitter, security guard, labor foreman and assistant maintenance man for the Van Buren County Memorial Hospital.

In addition to the hip injury, in 1970 plaintiff lost his right thumb and part of his middle and index finger on the left hand and later had his right index finger transplanted to where his right thumb was. Plaintiff testified that he would try anything with his hands.

The ALJ found that despite plaintiff's impairments, he retains the residual functional capacity to return to his past relevant work as a security guard. Plaintiff's duties as a security guard involved patrolling a plant and warehouse in a patrol car, making sure the alarms were set, and putting stickers on doors to make sure no one broke in. There was no use of machines, tools, or equipment of any kind, a total of four hours a day was spent walking and standing, two hours a day sitting, and occasional bending. No lifting was required.

In May 1980 the plaintiff injured his back while riding a lawnmower. Impression was acute lumbar spine pain with a probable herniated nucleus pulposus at L4–L5 on the right. He was treated with physical therapy and medication with good response. He was readmitted in June 1980 with signs and symptoms indicative of a herniated nucleus pulposus with limited range of motion, muscle spasm and tenderness in the lumbar spine. Once again he was treated with physical therapy and traction with good response. He was released

to return to work with no bending, stooping or lifting.

In November 1980 the claimant complained of some muscle spasm in his low back and he was given a prescription for Flexeril. He was to go back to his exercise and was to return on an as needed basis. He was next seen in February 1981 reporting some low back pain which had increased in severity. He was placed on isometric exercises for the neck and low back and was given a prescription for Naprosyn. In May 1981 the claimant reinjured his back changing a motor on a lawnmower. Dr. Grimes again recommended bed rest over a period of time with improvement in his condition. Once again Dr. Grimes instructed the claimant not to engage in any heavy bending, stooping and lifting. On April 20, 1982 Dr. Grimes reported the claimant had degenerative disc disease with pain down the right side with sciatic distribution. He also had what appeared to be some paresthetica type symptoms with numbness along the lateral thigh and over the iliac crest which was injected with Marcaine. The claimant was to return if his sciatica persisted. He returned on February 21, 1983 with recurrent back pain. As the claimant did not wish to be hospitalized, he was sent home to go to bed and remain off work for a week to ten days. He was given Norflex and Empirin No. 3. Follow-up in March 1983 revealed the claimant was improving somewhat. He was continued on Meclomen and given a refill of his Darvocet N–100 and Flexeril.

On April 30, 1985, the claimant was seen after his job requirements had been shifted to a riding lawnmower which aggravated his degenerative disc disease and osteoarthritis of the lumbar spine. X-rays revealed significant changes at L2–L3, L3–L4 and L4–L5 with some interspace narrowing at L5–S1. It was Dr. Grimes' opinion that riding a lawnmower aggravated the claimant's condition and that he was precluded from doing this type of occupation. He recommended that the claimant seek medical retirement if this job requirement was unchangeable.

The claimant was referred for a general physical consultative examination which was performed on February 14, 1986. Funduscopic examination was normal. The claimant's corrected visual acuity was 20/20 bilaterally. Breath sounds were normal. Heart examination was normal with no murmurs. The claimant had tenderness over the right lumbosacral area with full range of motion in his cervical, thoracic and lumbar spines. There was no kyphosis or scoliosis. The claimant had full range of motion in all of his extremities with no evidence of heat or swelling. The claimant's left second and third fingers were amputated at the proximal interphalangeal joint. The claimant had complete amputation of the right index finger which was implanted at the thumb site. He had 20 percent loss of grip strength in his left hand and 10 percent loss of grip in his right hand. Cranial nerves were intact. There was no muscle weakness, muscle atrophy or sensory abnormalities noted. The claimant's gait and coordination was normal. He could stand and walk without assistive devices, could walk on his heels and toes and could squat and arise from a squatting position. X-ray of the claimant's right hip revealed no abnormalities. Impression was lumbosacral back pain.

The ALJ concluded that although the plaintiff has severe degenerative disc disease and osteoarthritis of the lumbar spine; amputation of the middle and index fingers on the left at the PIP joint; amputation of the right thumb with transfer of the right index finger to the thumb; and an adjustment disorder with depressed mood; the plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. He further found that plaintiff's allegation as to the severity and resulting disability of the combined effects of his multiple subjective complaints are not found to be fully credible due to his findings made on physical examination, statements made by his treating physician, his failure to take any prescriptions and his high daily activity level. The ALJ concluded that plaintiff has the residual functional capacity to perform

work-related activities except for work involving heavy lifting, prolonged stooping and bending and riding on a lawnmower, and that his impairments did not prevent him from performing his past relevant work as a security guard.

■ The Court finds that there is not substantial evidence to support the Secretary's findings for the following reasons:

First, it appears that plaintiff's impairment would at least be medically equal to the listing found at 20 C.F.R. 404, Subpart P, Appendix 1, Section 1.05 *et seq.*, justifying a finding of disabled.

In addition, further inquiry warrants a conclusion that plaintiff's impairments would prevent him from doing past relevant work.

In order to establish disability under the Social Security Act, a claimant must prove, among other things, an inability to perform past relevant work. 20 C.F.R. § 404.1520(e) (1981). A determination of a claimant's ability to perform past relevant work involves an assessment of the claimant's residual functional capacity and the physical and mental requirements of the claimant's former work. *Id.* Residual functional capacity describes what a claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a) (1981), and "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c); 20 C.F.R. § 404.1501 *et seq.* It is a medical assessment, but the Secretary may also rely upon the claimant's own statements of his or her limitations, and information from other sources, in evaluating this issue. 20 C.F.R. § 404.1545(a) (1981). The Secretary must consider all of the claimant's impairments in determining residual functional capacity. *Id.*

■ In reviewing the Secretary's determination of residual functional capacity, the Court must determine whether the administrative record contains substantial evidence of a claimant's actual abilities to perform the physical acts of medium, light, or sedentary work day in and day out in the competitive and often stressful conditions of work in the real world. *Simonson v. Schweiker,* 699 F.2d 426, 429 (8th Cir. 1983); *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982).

■ The fact that a claimant has functioned in the past with certain impairments is not necessarily substantial evidence of the claimant's present ability to work, because a claimant's condition may deteriorate in time. *Davis v. Califano,* 605 F.2d 1067, 1072 (8th Cir.1979).

Plaintiff testified that the reason he does not take pain medication is because they ran into money. He takes aspirin on occasion but they are very little help. Plaintiff also testified that his daily activities are more restricted. He cannot sit or walk for very long periods of time and can do very little around the house. He is no longer able to hunt, which he previously enjoyed. His wife's testimony confirmed this.

Plaintiff was seen by Dr. Douglas A. Stevens for pschological and vocational evaluation on November 25, 1986. It was found that the patient was a man of very advanced vocational age who had a limited educational background (completed seventh grade) and who had mechanical skills that were not transferable to anything lighter than he was doing at the time he found himself no longer able to work. His chronic low back problems block him from doing anything that requires functioning on one position for long and he is very limited in his capacity to stand and function.

Even though he can sit more comfortably, his lack of literacy skills and his markedly impaired finger dexterity block him from doing any types of unskilled sedentary work.

Dr. Stevens further found that there is some emotional overlay that is secondary to his disability. His appetite is poor, he has difficulty sleeping and he feels hopeless about the future. However, it is not his depression that keeps him from working.

He evidenced constant deficiencies of persistence and pace resulting in failure to complete tasks in a timely manner.

Dr. Stevens concluded that these restrictions would block him from any jobs that exist in significant numbers in the local or national economy. When his physical impairment rating is considered, the rating system in the Federal Dictionary of Occupational Titles refers directly to vocational potentials. His inability to persist in either a sitting or standing position indicates a Class V physical impairment with severe limitation of functional capacity and an incapacity for even minimal or sedentary activity. This bears an impairment rating of 75 to 100 percent. It is reflective of his ongoing vocational disability, a disability which will in all likelihood be permanent, due to his age and the deteriorative nature of his physical condition. Also, when placed in a simulated work setting, he experienced an exacerbation of symptoms and had to withdraw from the situation.

Because of the pain and difficulty claimant experienced if sitting or standing for long periods of time, and the difficulty plaintiff experiences with his hands, the Court does not find it realistic to presume he could return to his former work as a security guard or to engage in any substantial gainful activity. "Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." *Celebrezze v. Bolas,* 316 F.2d 498, 501 (8th Cir.1963) (quoting *Kerner v. Flemming,* 283 F.2d 916, 921 (2nd Cir.1960)). Proof must be based on a realistic evaluation of the claimant's abilities in view of his or her age, education, training, work experience, and physical and mental capabilities. *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980). The evidence of subjective pain, coupled with the medical impairments, leads the Court to conclude that the record, considered as a whole, lacks substantial evidence to support the Secretary's findings.

THEREFORE, the plaintiff's motion for summary judgment is granted, the final decision of the Secretary is hereby vacated and reversed, and this cause is remanded to the Secretary with directions to award a period of disability and such benefits as the plaintiff is entitled to receive by law for his disability, which is found to have an onset date of April 29, 1985.